## Jacobs' Appeal.    Grove's Estate.

1. An administrator has no right to alter the terms prescribed by the Orphans' Court in an order of sale; but if he do so and the terms under which the sale has been made are reported to the Court and the sale is confirmed, they will have the same effect as if prescribed in the order.

2. It is irregular in an administrator without the leave of the Court, to extend the time of payment prescribed in the order. If an extension of payment be material to those interested, the matter should be reported to the Court, to direct a resale or otherwise order in the premises.

3. A purchaser under an order of sale directed by the Orphans' Court, who has utterly failed to comply with the terms of sale, has no estate in the premises legal or equitable; and a judgment by a third party against him at such time is no lien on the premises.

4. By the terms of the sale, confirmed by the Orphans' Court, one-half of the purchase-money was payable on 1st of April—but no part was then paid. On 4th April a judgment in favor of a third person unconnected with the sale was entered against the purchaser. On 19th May, 1849, the administrator conveyed to the purchaser receiving a portion of the first payment in cash and a judgment bond with surety payable on 1st June, 1849, for another portion of it; and other judgment bonds for the balance of the purchase-money; and judgments were entered on the bonds on 21st May, 1849, several months before the revival of the first judgment. *Held*, that the judgments to the administrator were entitled to payment in preference to the first judgment.

[Jacobs' Appeal.]

ERROR to the Common Pleas of *Adams county*.

These were appeals by George Jacobs, administrator, &c., of Samuel Jacobs, deceased, and by Jacob Wirt, from the decree of the Court of Common Pleas of Adams county, decreeing distribution of proceeds of sale of real estate of Francis Grove.

Under proceedings in partition an order was directed by the Orphans' Court of Adams county, for the sale of the real estate of Samuel Jacobs, deceased. The terms of sale prescribed in the order were, one-half of the purchase-money to be paid *in hand;* the residue in three equal annual payments; one-third of the hand-money, and one-third of each of the annual payments to remain a lien on the land during the life of the widow, she to receive the interest thereof annually, &c.

On 21st October, 1848, the property was struck down to Francis Grove, for $11.003.03, on different terms than those prescribed in the order. The terms of sale were, that the purchaser pay $600 at the close of the sale, or give his note for that amount, with approved security, payable one day after date, in part of the hand-money, and pay the remainder of the half of the purchase-money on or before the *first of April following* (1849), and to give his judgment bonds, or other bonds with security, for the residue, in three equal annual payments, *without* interest—the *third* of the various payments to remain a lien on the land, and the yearly interest thereof to be paid to the widow, &c. The deed was to be made when the first half of the purchase-money was paid in full, when possession was to be given. On failure to comply with the conditions the $600 was to be forfeited, and the estate might be resold, &c. The purchaser gave his note for $600, but at that time paid no money on account of the purchase.

This sale was *confirmed* on 20th November, 1848.

Possession was not given to the purchaser, and no deed was executed till the 19th *May*, 1849, when Grove, the purchaser, paid to the administrator $1400, and executed a judgment bond with surety for $2267.86, being for the balance of the first half of the purchase-money exclusive of the third, which was to remain a lien on the land. The bond was payable on 1st June next (1849), with interest from 4th April, 1849. Judgment was entered on this bond to April Term, 1849, No. 109, and the claim under it was afterwards transferred to Jacob Wirt, one of the appellants.

At the same time the deed and the said judgment bond were executed and delivered, the purchaser delivered to the administrator judgment bonds to secure the other portions of the purchase-money.

The 19th of May, 1849, on the *evening* of which day the deed and bonds were delivered, was *Saturday*. The place of delivery was about sixteen miles from Gettysburg, the seat of justice of Adams county. Judgments were entered on the bonds before 9

o'clock of *Monday* following, viz., 21st May, 1849, the entries respectively being numbered 105–6–7–8–9.

On the 4th *April*, 1849, before any part of the purchase-money had been paid, a judgment in favor of *William Bittinger* against Francis Grove, the purchaser, was entered for $3000. This judgment was revived on 2d April, 1850.

The premises so purchased by Francis Grove were sold at sheriff's sale on 6th March, 1851, at the suit of George Jacobs, the administrator, under judgment to April Term 106, and were sold for $3500—the net amount of which was the fund for distribution. The fund was claimed by Jacobs, the administrator, and by Jacob Wirt, as assignee of one of the judgments, in favor of Jacobs; and it was also claimed by William Bittinger, the latter claiming to have the first lien.

An auditor was appointed, who expressed the opinion that Francis Grove, the purchaser, by his contract with the administrator acquired an interest in the land which became bound by Bittinger's judgment on 4th April, 1849, and that such interest was increased by payment of part of the purchase-money and delivery of the deed, on 19th May. Reference was made to 3 *Binney* 4; 7 *Watts* 437; 8 *Id.* 422; 8 *W. & Ser.* 186; 1 *Barr* 386. He reported in favor of Bittinger, and his report was confirmed by the associate judges. From such decree the appeals were taken.

Exception was taken to the decree in favor of the judgment of Bittinger, in preference to the judgments of Jacobs and Wirt.

*Reed*, with whom was *Buehler*, for Jacobs, the appellant.

*Keyser* and *Mayer*, with whom was *Evans*, contrà.

*Durkee*, for appellant, in conclusion.

The opinion of the Court was delivered by

LEWIS, J.—The money in Court arises from the sheriff's sale of the real estate of Francis Grove. Bittinger claims priority by virtue of a judgment obtained on the 4th of April, 1849. If Grove had no estate in the land, either *legal* or *equitable*, at that time, Bittinger's judgment is not entitled to priority. Let us look into the origin of Grove's title. Proceedings for the partition of the real estate of Samuel Jacobs, deceased, took place in the Orphans' Court of Adams county. The Court ordered the estate to be sold by the administrator. It was sold on the 21st October, 1848, to Francis Grove, upon certain conditions in writing, published at the sale, and signed by the parties. That sale, thus made, was reported to the Orphans' Court, and confirmed on the 20th November, 1848. In contemplation of law the conditions of sale, thus confirmed by the Court, are to have the same effect

as if they had been prescribed by the Court in the order of sale. In a judicial sale, where the object is payment of debts, or distribution, the time of payment is of the essence of the contract. It influences the bidders at the sale. It is against equity to give a purchaser the advantage of bidding as at a cash sale, and afterwards to give him the benefit of paying by instalments. This may be all well enough where it is by consent of all the parties in interest. But where the law controls the proceedings for the benefit of minors and others, it is not to be allowed. If the circumstances of the estate are discovered to be such as to make an extension of the time of payment desirable, in general, upon a failure to comply with the terms of the contract, the Court would order a resale with notice of the more favorable conditions. They might, perhaps, in a proper case, if satisfied that the interests of the parties would be promoted by it, allow the purchaser an extension of time. But it is clear that the administrator has no right thus to alter the terms of the contract without the leave of the Court. The contract with Grove was, that he was to pay one-half the purchase-money, and secure the residue, on the 1st April, 1849, and on failure to do so the administrator was at liberty to resell the land with or without notice, and Grove, in that case, was to forfeit what he had paid. There was a total failure on the part of Grove to comply with the conditions of sale. The 1st of April, 1849, passed, and Grove neither paid nor offered to pay or secure any part of the purchase-money. He stood thus in default on the 4th of April, 1849, when Bittinger's judgment was entered. It is clear that at that time he had no legal *estate* in the premises. It is equally clear that he had none which he could have enforced in *equity*, for the reasons already stated. In ordinary cases, it is true that time is not of the essence of the contract. But where the law requires the conversion of land into money, for the purposes of justice, the rule is altogether different. Justice is not to be delayed for the accommodation of individual interests. As Grove had no estate in the land, legal or equitable, at the time Bittinger's judgment was entered, that judgment was not a lien on the premises sold to the exclusion of the judgments given to Jacobs for the purchase-money. In general a judgment in Pennsylvania does not open and close so as to bind subsequent acquisitions: 2 *Yeates* 23; 6 *Bin.* 135. It was the business of Bittinger, if he desired to make his judgment a lien on the land, to revive it after Grove acquired title. This, it is true, he did, but not in time to cut out the judgments of Jacobs. The administrator of Samuel Jacobs conveyed to Grove on Saturday evening, the 19th May, 1849, taking at the same time judgments for the unpaid purchase-money. This transaction took place sixteen miles from Gettysburg, the seat of justice. It was unreasonable to require the entry of the judgments that night. It was equally unreasonable to

[Jacobs' Appeal.]

expect them to be entered on the next day, which was Sunday. They were regularly entered on Monday. And if they had been taken in compliance with the terms prescribed by the Court in the order of sale, we would hold them to be valid liens, because taken under authority of law, and because everything that could reasonably be required of the officer of the law, under the circumstances, had been done. The principle affirmed in Love v. Jones, 4 *Watts* 473, applies to the case. In that case the deed and judgment were taken under the supervision of the Court, as the settlement of an action in the nature of a bill for specific performance; and although the judgment was not taken until an hour after the deed was delivered, the lien of the judgment was sustained. Watt v. Steel, 1 *Barr* 386, was a decision upon the acts of parties where it was their business to protect themselves. The act of the law does not receive a construction so strict. *Legis constructio non facit injuriam.*

We regard the title of Grove as a new acquisition of the 19th May, 1849. Its validity may depend upon the confirmation of the parties interested. But whether an acquisition of that date, or a purchase and compliance with the terms of a judicial sale, is immaterial for the purpose of the present decision. In either case, the judgments of the 21st May, 1849, are entitled to the money in preference to that of the 4th April, 1849.

It is ordered that the decree of the Common Pleas be reversed, and that the money in Court for distribution be paid, *pro rata*, to the judgments of George Jacobs, numbered 106, 107, and 108, and the judgment of Jacob Wirt, numbered 109, April Term, 1849.

Record remitted to the Common Pleas of Adams county, with directions to carry this decree into execution.

BLACK, C. J., dissented.