## Davis and Wife *versus* Dickson et al.

[margin: 92 365 / 41 SC 86]

1. Where the widow of an intestate enters into possession of realty as a tenant for life, under a decree in partition, the owners of the remainder can have no possessory action until her death, and the Statute of Limitations only begins to run against her and her vendees from that time.

2. Where, however, the proceedings in partition are inchoate and never consummated, and she had no right thereunder, and her claim and possession were adverse for over thirty years prior to the action of ejectment, such a lapse of time will bar a recovery against her and her vendees.

November 28th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Crawford county:* Of October and November Term 1879, No. 347.

Ejectment by Kennedy Davis and Margaret, his wife, against Joseph Dickson and others.

This was an action by Davis and his wife, a daughter and one of the heirs-at-law of Henry Hurst, deceased, to recover her proportionate share (one-seventh) of two lots in the city of Meadville, Pennsylvania, being a part of the estate of her deceased father. Henry Hurst died intestate in May 1823, leaving to survive him, a widow, Isabella, and nine children, Robert, George, Thomas J., Henry H., James M., William A., Maria, intermarried with Wm. A. Foster; Ellen, intermarried with Robert McCurdy, and Margaret N., the plaintiff, who intermarried with Kennedy Davis, in 1832, then in the 21st year of her age. On the 13th of June 1823, letters of administration on the estate were granted to Ira Blossom, Eliphalet Betts and Isabella Hurst, the widow; Ira Blossom having removed from the state, the Orphans' Court,

August 25th 1827, on petition of John Brooks, guardian of the minor heirs and the other administrators, appointed William Vincent in his place. In 1833, the petition of Betts and Vincent was presented to the Orphans' Court, setting forth that the affairs and business of the estate were all in the charge of, and conducted by Isabella Hurst, the widow, and asking that they be discharged; the widow concurred in the prayer of the petitioners, and on the 28th of December 1833, they were discharged, and the widow continued in charge of the affairs of the estate as administratrix. No administration-account was ever filed, nor was the widow in any way relieved of her trust until her death-in September 1861. On the 31st of December 1834, George Hurst, one of the heirs, presented his petition to the Orphans' Court of said county, setting forth " that his father, Henry Hurst, died intestate, leaving a widow, Isabella Hurst, and nine children (Robert, since deceased, intestate and without issue) the names of all the heirs as before stated, and seised of certain lots and buildings in the borough of Meadville, (including Nos. 267 and 268, the lots in controversy,) and certain other lands in said county, all fully described in said petition. An inquest was awarded, as prayed for, and a writ of partition issued. In March 1835, the sheriff returned his writ and schedule annexed, setting forth " that he had taken twelve good and lawful men to the premises mentioned in said writ, the parties in the same being severally warned, and as many as chose being present, and the jurors upon their oaths and affirmations, respectively do say, that the property as mentioned in said writ, can be parted and divided without prejudice to or spoiling the whole;.and proceeded to divide the premises; valuing each purpart, and allotting to each heir, by name, his specific part of the premises, and to Isabella Hurst, widow of said deceased, a certain lot of ground fronting on North street, and adjoining Andrew Work's lot on the north-east, and describing the same fully by metes and bounds; also, lots fronting on the south side of North street. Also, one hundred acres of land in Conneaut township, now sold."

March 11th 1835, the court confirmed the partition of the real estate of Henry Hurst, deceased, according to the return of the sheriff, made the 7th of March 1835, inst., and it is " considered and adjudged by the court that the same be and remain firm and stable for ever."

No exceptions were ever taken to this partition, nor any appeal taken therefrom, and there was no evidence upon the trial of any dissatisfaction on the part of the widow or any of the heirs with the partition made by the inquest; on the contrary, the evidence was clear that the widow and the heirs entered into and took possession of the several purparts as allotted to them respectively. The mansion house and lot were occupied by the widow and children from the death of Mr. Hurst until the partition. Under these

[Davis *v.* Dickson.]

proceedings, the mansion house and premises were allotted to George and Maria, intermarried with William A. Foster. Soon after the partition the widow, with the younger portion of her family, moved to the part allotted to her, and continued to reside thereon, with some of her children, until her death in September 1861. Several of the heirs, subsequent to the partition, sold the purpart allotted to them, respectively, and their deeds therefor recite the partition in the Orphans' Court, as the source of their title, the premises conveyed being the same awarded to them in the proceedings in partition.

On the trial below, the defendants sought to attack this partition, and alleged that the same was incomplete and invalid, and that the widow claimed an absolute title to that portion of her deceased husband's estate set apart to her under the proceedings in partition. There was no pretence that Mrs. Davis, the plaintiff, has ever made any assignment or conveyance of her reversionary interest in the premises. Upon the trial there were several objections taken to the reception and rejection of evidence, and after testimony and arguments of counsel closed, the court charged the jury substantially, that the partition in the Orphans' Court was inchoate, unconsummated and incomplete, and if the jury believed that Mrs. Isabella Hurst began to exercise acts of ownership, committing acts of ouster against the plaintiffs in common with the other heirs, for over thirty years prior to bringing this suit, she is barred from recovery in this action. The jury, under this charge, returned a verdict for the defendants, and to correct these and other errors this writ was taken.

*Joshua Douglas* and *C. W. Tyler*, for plaintiffs in error.—The plaintiff in this case is one of the heirs-at-law of Henry Hurst, deceased, and on the trial below established by the record, and admitted facts, a complete title to the undivided one-seventh part of the premises in controversy. To defeat this the defendants undertook to show that Mrs. Isabella Hurst, the plaintiff's mother, under whom the defendants claim, while in possession of a portion of the real estate of the ancestor, entertained some idea that a certain part of the real estate of her deceased husband was her own, and offered in evidence some declarations of claim and acts of the widow, which they asserted amounted to a disseisin of the plaintiff and the other heirs, and gave title to the widow in fee. In answer to this plaintiff gave in evidence proceedings in partition of the real estate of the ancestor in the Orphans' Court in 1835. The plaintiffs maintain that this partition was the chart which defined and limited the title of the widow and heirs to the portions of real estate of the decedent allotted to them respectively ; that the partition of the estate of the ancestor was complete and efficient·for all the purposes contemplated by law ; that the decree of the Or-

[Davis *v.* Dickson.]

phans' Court confirming this partition as made by the inquest was final and conclusive, and the regularity of the proceedings could not be inquired into in this action.

*J. J. Henderson, Wm. R. Bole* and *J. W. Smith,* for defendants in error.—The legal question to which the plaintiffs in error have addressed themselves is as to the legal effect of the partition proceedings in the Orphans' Court. The court below charged that the proceedings were "never consummated or completed as required by law, to vest title to the respective purparts in severalty." The payment of the money or the giving of security for the shares of the other heirs is a condition precedent without the performance of which no estate vests: Harlan et al. *v.* Langham and wife, 19 P. F. Smith 235; Bellas *v.* Evans, 3 P. & W. 479; Bavington et al. *v.* Clarke, 2 Id. 115; Smith *v.* Scudder, 11 S. &. R. 325; Scott on Intestate Laws 414. Therefore the ruling of the court below as to the force and effect of the Orphans' Court record was correct. And it was not an attempt in a collateral proceeding to impeach the decree of the Orphans' Court. That decree was in effect but a confirmation of the appraisement. It is true the parties might accept the purparts designated by the jury at the appraisements made, and after twenty years the law would raise a presumption that the sums necessary to equalize the shares had been paid; but that would be nothing more nor less than a parol partition. And this is just what these heirs did. They used the forms of law to make the appraisement, and then took possession and disposed of their lands in this and other counties according to their family arrangement and agreement giving, the widow her lots in fee. A feme covert may become a party to an amicable partition and so may minors by their guardians: Willard et al. *v.* Willard, 6 P. F. Smith 119; Darlington's Appropriation, 1 Harris 430; Calhoun *v.* Hays, 8 W. & S. 127; Weekes *v.* Haas, 3 Id. 521; Wetherill *v.* Micke, Brightly's R. 135.

But if this court should be of opinion that there was a perfect partition it would not be ground for reversal, for the reason that it was competent for the widow and heirs, after the partition of the lands in Crawford county, to agree that the widow should hold her purpart, not as tenant in dower, but in fee, in consideration of her release of dower in the lands in other counties; and such agreement, whether in parol or by deed. would render her possession thereafter adverse.

Mr. Justice GORDON delivered the opinion of the court, January 5th 1880.

From the evidence in this case, there is no doubt about the rectitude of the verdict. Isabella Hurst, widow of Henry Hurst, took possession of the property in dispute some forty-three years ago;

and, since that time, she and her vendees, with the knowledge and assent of the heirs, have occupied it, made valuable improvements upon it, and in all respects regarded and treated it as though they were the absolute owners of the fee. Nor is there much doubt, but that she entered under a family *arrangement*, or parol partition, by which she was to have the Meadville lots in fee, in lieu of her dower.

That she so entered, is rendered probable from the fact, that of property of her husband, in other counties than Crawford, she claimed no dower, but permitted his heirs to divide it among themselves as they saw fit; besides this, however, there was positive proof of such an *arrangement*. Whatever, therefore, might have been the effect of the partition, there was some evidence to submit to the jury, that she held as owner of the fee and not merely for life.

Nevertheless, if the decree in partition was valid and binding upon the parties, if thereby a life estate only, vested in Mrs. Hurst, it would be all but conclusive evidence, that she not only entered but continued, during her life, to hold under that decree; and this, of course, would go far to defeat the defence of her vendees, so far as it depends on the Statute of Limitations.

Mrs. Hurst died in 1861; and if, under the decree, she entered as tenant for life, the owners of the remainder in fee could have no posessory action until her death, and the statute could only begin to run from that time: Ege v. Medlar, 1 Norris 86. If, however, that decree gave her no right, then her entry was without right, and her claim and possession being adverse, the statute would give her a good title.

Now, the court held, that no title vested in her by force of the decree in partition; that, so far as it was concerned, she entered without right; that it was inoperative, except in so far as it was adopted as the basis of the family settlement already referred to. In this we think the court was right.

In the first place, the jury appointed, under the proceedings in partition, to make division of the property, finding that they could not make an equal partition of the estate, divided it as best they could and appraised the purparts. Here, under the Act of 29th April 1832, their power ended. They proceeded, however, to allot the several purparts to the widow and heirs *nominatim;* this of course, they had no power to do. This power belonged to the court alone, and that, only after choice by the heirs, in regular order. Nevertheless, the court adopted this allotment, and, though irregular, it might have been valid if the heirs had come into court and accepted under the decree; but they never did so; and it is hardly necessary to say, that, without such acceptance, the partition came to nothing. Neither court nor jury could impose owelty on either of the heirs, without his or her consent; neither could

[*Davis v.* Dickson.]

the widow be compelled to accept less than her dower.   In the case of McClure *v.* McClure, 2 Harris 134, it is said, by Mr. Justice COULTER, that the judgment in partition does not even divest the title in common, until payment of owelty be made to the other parties in proportion to their respective rights; and that the taker's title depends upon his making payment, and *not* upon the judgment in partition.   It was also held, in Harlan *v.* Langham, 19 P. F. Smith 235, by our brother SHARSWOOD, the present Chief Justice: " That a partition, whether by action or proceeding in the Orphans' Court, leaves the title as it found it.   It dissolves tenancy in common, but it does not divest title in common, until payment of the shares of the other owners."   To the same effect is Smith *v.* Scudder, 11 S. & R. 325; and Bavington *v.* Clarke, 2 P. & W. 115. As, in the case in hand, neither of the heirs so much as accepted a purpart, it follows that the partition came to nothing; and that the title to the property remained just where the partition found it; that is, in the heirs in common, charged with the widow's dower. To us, then, it seems clear, if the widow and heirs adopted this partition at all, it must have been by arrangement among themselves, and not by force of the decree of the court; and if this be so, the whole matter rested in parol and was properly determined by the jury, under the instructions of the court.

There is another difficulty in this partition, which to me seems insuperable.   Notwithstanding the jury could not make equal partition between the widow and heirs, and so were forced to make a valuation, in order to equalize the purparts; yet one of those purparts, so valued just as the others, was assigned to the widow, without any consideration of, or reference to, the fact, that her estate was of one-third of the whole for life; and, furthermore, by that assignment and valuation, she became entitled to owelty. Here then, is certainly a fatal defect in these proceedings, for dower is not set off to the widow; nor is there a pretence in that direction, but she is treated as an heir, and allotment made to her accordingly.

But again, if she may, in any case receive owelty, it follows, that she may be charged with it; but she could not be so charged without her consent, or peradventure, she might be charged out of her dower.   She must therefore have the right of choice along with the heirs, but for this, no provision is made in the statute; and this for the very good reason, that her estate is but for life, hence not equal to that of an heir.   If she were required to pay owelty, it might be more than her estate would be worth, for it might be determined with her life, the next hour after payment; and the same objection lies to her receiving it.

How can a life-estate possibly be equalized with a fee?   Had the partition been regularly made; had the purparts been numbered and valued, and thus returned, as they ought to have been, to the

[Davis *v.* Dickson.]

court for allotment, it is certain the widow could not have been called upon to choose one of the purparts, but her dower would have been apportioned among the several allotments, and so it would have remained charged upon the whole estate until her death. Certainly this partition, at least as to the widow, was utterly worthless and void.

There is nothing else in the case which requires comment.

Judgment affirmed.