# Kaufmann, Appellant, v. Pittsburgh.

*Real property—Partition—Eminent domain—Opening of street
—Sale of property—Party entitled to damages—Judicial sale—
Notice at sale—Estoppel.*

1. The object of a proceeding in partition is to make a physical division of the real estate among the several cotenants in accordance with their respective interests, and if this is not practicable, the statutes provide for the contingencies which may arise, one of which is the sale of the premises, or any of the purparts thereof.

2. The decree quod partitio fiat does not dissolve the cotenancy or sever the possession, nor does it divest the title to the premises held by the tenants in common.

3. Until a proceeding in partition is completed by the confirmation of the allotment or of the sale of the property by the court, the title and ownership remain in the tenants in common. The title does not vest in the purchaser until, the confirmation of the sale and the purchase-money is paid or secured.

4. Damages arising from the location and opening of a street in a city are a claim personal to the owner of the land at the time the injury occurred, and do not pass to a subsequent purchaser.

5. In such case where the street was opened upon certain land after a decree in partition and order of sale thereof had been made but before the sale, the right of action accrued to the former owners and not to the purchasers at the sale.

6. Where the property was bought at such sale by three or four tenants in common, the contention of the purchasers that the widow and heirs of the deceased tenant were estopped from claiming any part of the damages by reason of the announcement and notice to bidders at the time of the sale that the purchaser would be entitled to the damages, could not be sustained where it was denied that such notice was given, and where it did not appear that the widow and heirs of such deceased tenant heard the notice, if given.

Argued Oct. 23, 1914. Appeal, No. 175, Oct. T., 1914, by plaintiffs, from judgment of C. P. Allegheny Co., April T., 1912, No. 1263, making absolute rule to amend record by substituting additional use-plaintiffs in case of Isaac Kaufmann, Morris Kaufmann, Henry Kauf-

mann and the Estate of Jacob Kaufmann, deceased, now for use of said Isaac Kaufmann, Morris Kaufmann and Henry Kaufmann, v. City of Pittsburgh. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Petition for rule to substitute petitioners as additional use-plaintiffs in appeal in condemnation proceedings. Before DAVIS, J.

The facts appear by the opinion of the Supreme Court.

The lower court made absolute the rule to amend the record as petitioned. Plaintiffs appealed.

*Error assigned* was the order of the court.

*Joseph Stadtfeld,* for appellants.

*Ernest C. Irwin,* with him *C. Chester Kaufmann,* and *Watson & Freeman,* for appellees.

OPINION BY MR. JUSTICE MESTREZAT, January 11, 1915:

Jacob Kaufmann died November 1, 1905, seized as tenant in common with his three brothers, Isaac, Morris and Henry, of, inter alia, a certain piece of real estate in the first ward of the City of Pittsburgh, known as "Kaufmann Warehouse Property." A bill in equity for the partition of the real estate was filed on November 6, 1909, and a decree of partition was entered December 6, 1910. A master was appointed to make the partition, and no bids for the property having been submitted by any of the parties in interest, the court, on April 25, 1911, directed the master to sell it. The property was duly advertised and on June 1, 1911, was sold to Isaac, Morris, and Henry Kaufmann. The sale was confirmed on June 8, 1911, and a deed was made to the purchasers on June 17, 1911.

An ordinance was passed by the councils of the City

of Pittsburgh, which was approved by the mayor on
April 6, 1911, locating and opening Watson street
through the property in question held by the Kaufmanns
as tenants in common. Viewers were appointed May 6,
1911, to determine the damages due the owners by rea-
son of the location and opening of the street, and on
May 31, 1911, they viewed the premises and made a re-
port to the court of the damages assessed. The owners
deeming inadequate the amount awarded them as dam-
ages took an appeal to the Common Pleas on February
13, 1912, the case was tried November 28, 1913, and a
verdict was rendered for the plaintiffs in the sum of
eighteen thousand, seven hundred and forty-six dollars
and fifty-seven cents ($18,746.57). The appeal from the
report of the board of viewers was entered in the name
of Isaac Kaufmann, Morris Kaufmann, Henry Kauf-
mann and the estate of Jacob Kaufmann, deceased, now
for the use of Isaac Kaufmann, Morris Kaufmann and
Henry Kaufmann. On February 13, 1914, Jacob Kauf-
mann's widow and heirs presented a petition to the
Common Pleas and obtained a rule on the three other
tenants in common to show cause why the record should
not be amended by striking from the caption of the case
the words "now for the use of the said Isaac Kaufmann,
Morris Kaufmann and Henry Kaufmann," and why
judgment should not be entered in favor of the estate of
Jacob Kaufmann, as well as in favor of Isaac Kaufmann,
Morris Kaufmann and Henry Kaufmann on the verdict
of the jury. Subsequently the court below made the
rule to amend the record absolute, and from this order
an appeal was taken. The use-plaintiffs who are the
purchasers are the appellants, and they contend that
their title to the premises relates back to the decree of
partition that the sale operated as an equitable assign-
ment to them of the damages recovered from the city by
reason of the location and opening of the street; and
that the appellees, Jacob Kaufmann's heirs, are es-
topped by the announcement made at the time of the

sale that the damages would go to the purchaser of the property.

We cannot sustain either of these contentions. The title to the premises was in the four cotenants when the bill was filed in November, 1909. The object of a proceeding in partition is to make a physical division of the real estate among the several cotenants in accordance with their respective interests, and if that is not practicable, the statutes provide for the contingencies which may arise, one of which is the sale of the premises, or any of the purparts thereof: Kennedy v. Condran, 244 Pa. 264, 267. If the property cannot be divided among the several cotenants it is directed to be sold and the title passes to the purchaser. As we have repeatedly held, partition does not operate upon the title or in any way change its character nor create a new title. The title which an allotee or purchaser of a purpart takes is such as the tenants in common had prior to the partition. The decree quod partitio fiat does not dissolve the cotenancy or sever the possession, nor does it divest the title to the premises held by the tenants in common : McClure v. McClure, 14 Pa. 134; Harlan v. Langham, 69 Pa. 235; Davis v. Dickson, 92 Pa. 365. It is interlocutory and is simply one of the several steps which, in a proceeding in partition, makes a division of the property among the owners and vests such title as they hold in common in the allotee or purchaser of a part or the whole of the premises. We have repeatedly held, and it may be considered as settled in this jurisdiction, that until the proceeding is completed by the confirmation of the allotment or of the sale of the property by the court, the title and ownership remain in the tenants in common. The title does not vest in the purchaser until the confirmation of the sale and the purchase-money is paid or secured: Walton v. Willis, 1 Dall. 351; Davis v. Dickson, 92 Pa. 365. In the case in hand, therefore, the title of the Kaufmanns, the tenants in common, did not pass

to the purchasers until June 8, 1911, when the sale was confirmed by the Common Pleas.

While this is in effect conceded by the appellants, they contend that the decree of partition entered in December, 1910, fixed the status of the subject matter, and the title of the purchasers relates back to that decree. If this contention be correct, it in effect makes tenants in common trustees for the subsequent unknown purchasers in proceedings in partition which, so far as we are advised, has never yet been suggested in any reported case. The possession and right of possession of the property unquestionably remain in the tenants in common until the title is divested, and during the pendency of the partition proceedings they, of necessity, are the only parties who can resist invasion of the property or protect it against a trespasser. If it is taken under the right of eminent domain, proceedings for the recovery of damages or compensation for the land taken must be instituted in the names of the cotenants. As shown by the authorities cited by the appellees, tenants in common as the owners of the property are entitled to all the income and profits arising therefrom until its allotment or the confirmation of the sale. Such profits are the personal assets of the tenants in common and do not pass by the confirmation of the sale or the delivery of the deed to the purchaser. There can, therefore, be no doubt that the title to the premises was vested in the four tenants in common until the confirmation of the sale on June 8, 1911, and that the preliminary decree of partition vested in the purchasers no interest in or title to the property.

The city ordinance locating and opening Watson street through the premises was approved by the mayor on April 6, 1911, viewers to assess the damages were appointed at the instance of the city on May 6, 1911, and notice was given to the owners May 13, 1911, of the meeting of the viewers to be held on May 31, 1911, when they met on the premises for the performance of their duties.

The appropriation by the city of the land for the street, therefore, occurred prior to the sale and its confirmation, and before the title had vested in the purchasers, the appellants. The owners at the time of the appropriation were the tenants in common, including the appellees, and they were entitled to the damages which were caused by the location and opening of the street: Tenbrooke v. Jahke, 77 Pa. 392; Uhler v. Cowen, 199 Pa. 316; North Front Street, 52 Pa. Superior Ct. 345. The right to such damages is personal, belonging to the owners of the land when the entry and injury takes place, and the damages do not run with the land nor pass by a subsequent conveyance of it although not specifically reserved: Schuylkill & Susquehanna Navigation Co. v. Decker, 2 Watts 343; McFadden v. Johnston, 72 Pa. 335; Losch's App., 109 Pa. 72; James v. West Chester Borough, 220 Pa. 490. In the Losch case it was said: "Damages being in the nature of a trespass for injury done to the land do not pass by a subsequent conveyance thereof. The damages were a personal claim of the owner when the injury occurred. They do not run with the land nor pass by the deed, although not specifically reserved." If a conveyance of land by the owners subsequent to the date when the right to damages accrue for the opening of a street does not convey the damages to the grantee, it is clear that a judicial sale of the same title will not vest in the purchaser a right or claim to the damages. A judicial sale of real estate passes only the execution debtor's title to the premises, and should that be worthless, the purchaser takes nothing, as the rule of caveat emptor applies. A sale in partition is a judicial sale: Sackett v. Twining, 18 Pa. 199; more strictly so than a sale by a sheriff under an execution: Girard Life Insurance Annuity & Trust Co. v. Farmers' and Mechanics' Bank, 57 Pa. 388. We have distinctly ruled that in partition nothing can be sold but the title which was vested in the parties to the proceedings, the purchaser bids for that alone: Allen v. Gault, 27 Pa.

473.  The deed conveys to the purchaser only the title which the parties to the proceedings had at the time of the sale.  It, therefore, may be regarded as settled in this State that damages arising from the location and opening of a street in a city are a claim personal to the owner of the land at the time the injury occurred, and that they do not pass to a subsequent purchaser at a master's sale in partition of the premises.  The contention that the sale to the appellants in the case at bar operated as an equitable assignment of the damages to them is without merit and cannot be sustained.

It is clear that the order of sale issued to the master conferred no authority upon him to sell or convey the right to the damages arising from the location and construction of Watson street, and he had no authority to change the terms of sale: Jacob's App., 23 Pa. 477. From his report it is apparent that he made no such sale, unless the sale of the premises carried with it a right to the damages.  Whether the damages did pass by the sale of the land was a question of law which the master was not authorized to determine.  The appellants, however, contend that the appellees are estopped from claiming any part of the damages by reason of the announcement and notice to bidders at the time of the sale that the purchaser would be entitled to the damages.  The appellees deny that such notice was given at the sale.  In determining this question the learned judge of the court below had the testimony of several witnesses before him, and he found the appellants had not shown that the appellees heard the notice, if any such was given, at the time of the sale.  There was ample evidence to sustain this finding and, we think, would have sustained the further finding that no such notice was given at the sale. The appellants set the matter up as a defense and, therefore, they had the affirmative of the proposition to sustain.  Conceding that the appellees could be estopped from asserting their claim to the damages by such notice, the burden was upon the appellants to show, not only

that the notice was given but that it was brought home to the appellees. The learned court below has found that if the announcement was made at the sale, it was not shown that the appellees heard it. This is a question of fact, and there being sufficient evidence to support the finding we cannot interfere with it.

The order of the court below making absolute the rule to amend the record is affirmed.