## Powell Appeal.

468

Argued April 23, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*William Taylor, Jr.,* with him *Holl, Taylor & Holl,* for appellant.

*Lloyd B. White, Jr.,* with him *Arnold M. Snyder,* for appellees.

OPINION BY MR. JUSTICE JONES, June 25, 1956:

These appeals are from an order of the Court of Quarter Sessions of Delaware County confirming an *in limine* report of a jury of view which determined that the appellant had no right to any damages which might be awarded by the viewers for two separate condemnations of certain land for State highway purposes, to which damages the appellant laid claim. The question reached the court below for decision on the appellant's exceptions to the viewers' *in limine* report, identic copies whereof were filed in the two proceedings below. The court dismissed the exceptions in an order applicable to both proceedings, and these appeals followed.

The facts are fully and extensively stipulated, those presently material being stated by the learned court below as follows: "On August 3, 1948, Edgar W. Powell, the owner of the real estate in question, entered into a written agreement whereby he gave one Robert Siddall the option to purchase the said real estate, at a price of $1500.00 per acre, within five years. The consideration paid by Siddall was Five Thousand ($5,000.00) dollars. Ten days later, on August 13, 1948, the Governor approved the right-of-way plans for Sproul Road within which part of the property under the option agreement was located. . . . On May 5, 1949, Siddall assigned all his right, title and interest in the option agreement to Edward J. Walsh and that assignment was recorded. On May 12, 1950, the Governor approved the right-of-way plans for State Road within which part of the property under the option agreement was located. On March 9, 1953, Walsh exercised his option and he and Powell entered into a written agreement of sale and purchase for the real estate described in the option agreement. Final settlement for the said real estate was made on March 13, 1953 and a deed including the property taken by the State was delivered and accepted on that date. However, Powell and Walsh entered into a separate agreement wherein it was agreed that whether Walsh was entitled to share in the damages resulting from the widening of State and Sproul Roads would be left to further negotiations or to the decision of the State or of the courts."

Powell petitioned the court for the appointment of viewers to assess the damages to the land covered by the option agreement due to the above mentioned condemnations. In appointing the jury of view, the court's order directed that the viewers determine *in limine* which of the two, Powell or Walsh, was entitled

to the damages awardable, if any. The viewers concluded that, since Walsh was the owner of the land at the time of the condemnations, he was consequently entitled to the damages.

The appellant concedes that the ownership of the property covered by the option agreement was not in dispute but maintains that he reserved to himself the damages to the land resulting from the condemnations by virtue of paragraphs 1 and 8 of the option agreement which read as follows: "1. Optionee shall pay the sum of Fifteen hundred Dollars ($1500.00) for each acre of land purchased by him, the land included in the right of way lines of State Road, Sproul Road and Woodland Avenue, as established by the Commonwealth of Pennsylvania or the Township of Springfield at the time when the optionee buys or agrees to buy the tract or portions thereof, shall not be included in the computation of acreage. No commission is payable by the Owner to the Optionee . . . 8. Upon the execution by Optionee of an agreement of sale to purchase land hereunder, and in the event the said land or a portion thereof shall thereafter be appropriated, condemned or taken by eminent domain, Optionee shall be entitled to the damages for such taking."

The State Highway Law of 1945, P.L. 1242, Section 301 et seq., 36 PS §670-301 et seq., provides for the ascertainment and payment of damages for land taken for the construction, reconstruction or improvement of any State highway. Section 303 authorizes the court of quarter sessions, upon petition, to appoint viewers for the purpose of ascertaining and assessing damages or benefits growing out of a condemnation. While the Act does not expressly authorize viewers to decide questions other than such as relate to land values or damages or benefits to the affected property,

it is implicit that a jury of view must decide all relevant questions of law or fact before it can competently make an award of damages or assessment of benefits: see *Case of the Germantown and Perkiomen Turnpike Road Company,* 4 Rawle \*191.

In the *Germantown and Perkiomen* case, supra, the court of quarter sessions quashed a report of viewers because they had reported conditionally, i.e., reserving matters of law for determination by the court. On appeal, this court affirmed, saying in a brief per curiam opinion delivered by Chief Justice GIBSON,—"[The viewers] were bound to dispose, in the first instance, of all the matters committed to them, whether constituted of law or of fact, subject however to review by the sessions." What the viewers should have done, but did not do, in the cited case is exactly what the jury of view did do in the instant case in their *in limine* report; it disposed of the matter specially committed to them by the order of the quarter sessions with right of exception or appeal from the viewers' decision "with the same force and effect as though a final award had been made." See, also, *Grubb v. Commonwealth,* 47 D. & C. 651, 655, where the viewers determined that a "release [was] wholly invalid and without legal effect and is not a bar to an award of damages." Thus, a jury of view is competent to resolve questions of contract interpretation as is also the court of quarter sessions on exceptions to the viewers' report.

While the viewers may pass upon the title to land, which is the subject of condemnation, so far as to determine who are entitled to the damages (*Winebiddle v. Pennsylvania Railroad Co.,* 2 Grant's Cases 32, 33 (1852)), a jury of view is without power "to decide a dispute of title between owners claiming the same piece of property": *Conshohocken Avenue,* 1 Walker

424, 426-427 (1877). Both of the above decisions were by this court. Jurisdiction to try a dispute of title to real estate is vested in the court of common pleas: see *Waltz' Petition for Viewers,* 4 Monroe L.R. 67.

But, no question of disputed title is here involved. Powell concedes that Walsh has been the title owner of the property since March 13, 1953, and that prior thereto he was, by due assignment, the optionee of the property under the agreement of option entered into by Powell and Siddall on August 3, 1948. The question, as to which of the parties is entitled to the damages to the land due to the condemnations, is one of intent as expressed in the option agreement. The jury of view was competent to decide that question. The procedure adopted by the court below so that the question of legal right to the damages could be decided *in limine* conformed with modern practice, under the Rules of Civil Procedure, of determining liability before evidence of the extent of the injury or damages is received. See Rule 224 Pa. R.C.P. The provisions of the court's order appointing the jury of view made the viewers' *in limine* report a timely subject for exceptions in the court below whose order thereon concluded the question of right to the damages and thus made it final and consequently appealable.

The right to damages for an appropriation of property by condemnation belongs to the owner thereof at the time of the taking and does not pass to a subsequent purchaser. This rule was clearly expressed in *Kaufmann v. Pittsburgh,* 248 Pa. 41, 46, 93 A. 779, where it is stated that "The right to such damages is personal, belonging to the owners of the land when the entry and injury takes place, and the damages do not run with the land nor pass by subsequent conveyance of it although not specifically reserved:

[citing cases]." The *Kaufmann* case, in such regard, was cited with approval in *Fidelity-Philadelphia Trust Company v. Kraus,* 325 Pa. 581, 583, 190 A. 874. And, in *Smith v. Commonwealth,* 351 Pa. 68, 71, 40 A. 2d 383, we said that "Nothing is more firmly settled in the law than the fact that the owner of land at the time of condemnation by eminent domain proceedings is entitled to any damages which result from the condemnation: [citing cases]."

The owner entitled to the damages for land taken by condemnation has been held to be anyone with an interest in the property if such interest has been injured or benefited by the taking: see *Scholl's Appeal,* 292 Pa. 262, 266, 141 A. 44. An option to purchase land is a substantial interest in the land; and, when the option is exercised, the optionee's ownership reverts to the granting of the option: *Peoples Street Ry. Co. v. Spencer,* 156 Pa. 85, 90-91, 27 A. 113. Accordingly, where condemnation of land follows the granting of an option to purchase it and the optionee subsequently exercises the option according to the agreement, the optionee is entitled to the damages due to the taking unless the optionor has specifically reserved them to himself: *Phoenixville, Valley Forge & Strafford Electric Railway Co.'s Appeal,* 70 Pa. Superior Ct. 391, 395-396.

The foregoing general principles are not disputed by the parties to the present appeal. Their difference lies in their respective interpretations of the option agreement with respect to which one of them was entitled to the damages payable for the land taken. As already indicated, it is the appellant's contention that paragraphs 1 and 8 of the option agreement were intended and designed to reserve to him the damages flowing from the condemnations.

Paragraph 1 of the option agreement clearly states that the optionee was to pay $1500 per acre for any land purchased but that land within the rights of way of the roads *at the time of sale* should not be included in the computation of the price. It is obvious that, if the width of the rights of way of the roads as they actually existed at the date of the option agreement were to be increased between the time of the granting of the option and the time of sale, the owner would receive nothing from anyone for the land so taken unless he were to receive the damages for the taking by condemnation. Otherwise, the optionee would not only not have to pay for the land taken for the expanded highway boundaries but would receive the damages for the taking. Certainly the option agreement is not to be construed so as to produce such an unconscionable result. Moreover, paragraph 8 provides that the optionee is to be entitled to the damages for the land taken if he ultimately enters into an agreement of sale and ". . . said land . . . shall *thereafter* be appropriated, condemned or taken by eminent domain . . ." (Emphasis supplied). Only if both of the above contingencies happened was the optionee to be entitled to the damages. The fact is, however, that the land was condemned prior to the execution of the agreement of sale and, therefore, one of the specified contingencies, upon which the optionee's right to the damages depended, never occurred. Consequently, he has no just claim to the damages. The provision in paragraph 8, read in the light of the omission of a method of compensation for the land taken for the widening of the highways as contemplated in paragraph 1, clearly confirms that, in the situation which actually transpired, the appellant was to receive the damages due to the condemnations.

The lower court ruled that paragraph 8 was merely declaratory of the law applicable to the circumstances contemplated and added nothing to the option agreement. Hence, it was to be disregarded in interpreting the contract. But, the provision was presumably inserted for a purpose. What it did was to differentiate the person entitled to the damages for a taking, if the appropriation occurred after the optionee's exercise of his option to purchase the land from the one entitled thereto when the condemnation preceded the optionee's exercise of the option. Only by reading paragraphs 1 and 8 together can the true meaning and intent of the parties be ascertained. "It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument. An interpretation will not be given to one part of a contract which will annul another part of it": *Neal D. Ivey Company v. Franklin Associates, Inc.*, 370 Pa. 225, 231-232, 87 A. 2d 236.

The fact that the land appropriated was included in the description in the appellant's deed to the appellee for the property has no present relevancy. As already pointed out, the question is not one of title but of the meaning of the option agreement as to who was to be entitled to the damages from the anticipated condemnations.

Order reversed at the appellee's costs and the record remanded with a procedendo.