Fogel Refrigerator Co. v. Oteri

512

*Edward N. Rosenwald,* for petitioners.

*Leon Rosenfield* and *Max A. Daroff,* for respondent.

ALESSANDRONI, P. J., August 9, 1957.—Defendants filed a petition to open a judgment entered by confession on a note executed by defendants; the note was given as collateral security in a transaction which involved the purchase of refrigeration equipment. The note was dated June 29, 1955; judgment was entered on July 1, 1955. Defendants alleged forgery and fail-

ure of consideration as the defenses to be offered if the judgment were opened. Plaintiff's answer was responsive and denied defendants' material averments; depositions were taken. On March 11, 1957, the parties stipulated and agreed that the court's consideration of the controversy be limited to defendants' allegation of forgery.

Although the record was then complete, for a reason not apparent defendants thereafter filed an amended petition. Plaintiffs did not answer the amended petition. It can be given no effect since it was not filed in season; moreover it adds nothing.

The transaction involved the sale by plaintiff and the purchase by defendants of more than $25,000 worth of refrigerated equipment for use in food merchandising. The equipment contracted for consisted of refrigerated display cases and allied refrigeration facilities for the sale of meats, frozen foods, delicatessen items, fresh fruits and produce; the quantity of equipment was sufficient to equip a modern food and meat market. A cash payment on account was not required. The bailment lease was selected as the security device to protect plaintiff's interest until payment; the rentals plus interest were in excess of $31,-000. In addition to the bailment lease, defendants were required to execute a note as *collateral security* (Italics supplied.)

The documents were executed; the equipment was installed; difficulties then arose. Defendants complained that the equipment was not only improperly installed but it was not in operating condition. Plaintiff made some adjustments but denied most of the complaints; it asserted that the difficulties which had arisen were caused by defendants' failure to provide the plumbing and electrical installations required, which, under the contract, were defendants' responsibility.

Correspondence over the complaints and efforts to remove them developed between the parties and various counsel for the parties. As recently as August 9, 1956, defendants signed a writing in plaintiff's counsel's office whereby they agreed that the drawings attached to the writing represented the actual or proposed physical layout of the installation of the equipment and defendants further promised to start the monthly payments on their obligation no later than September 20, 1956. In January, 1957, plaintiff notified defendants that plaintiff could not undertake servicing of electric motors installed in the cellar until defendants had notified them that the necessary electric power had been furnished.

The foregoing is not completely germane but provides the necessary background against which the legal issue can be examined.

Defendants' petition to open the judgment alleges that: (1) Plaintiff and defendant entered into a bailment lease agreement for the manufacture and installation by plaintiff of the refrigerated equipment hereinbefore mentioned in defendants' place of business; (2) that the agreement, attached to the petition and marked exhibit "A", consisted of four folio pages; (3) that the note was an integral and essential part of the agreement and not a separate instrument and was not under any circumstances to be physically separated from the other documents; (4) that the parties agreed and understood that the note was to be entered in "Philadelphia County alone"; (5) that plaintiff caused the note to be separated from the balance of the agreement and contrary to the terms thereof plaintiff had not only entered the judgment in Philadelphia, but on August 8, 1956, caused the judgment to be transferred to Delaware County; (6) that the separation of the note constitutes a material alteration and is in law, forgery.

Plaintiff's answer admitted the transaction but denied: (1) That defendants' exhibit "A" represented the agreement between the parties; (2) that the note was an essential and integral part of the agreement and not intended to be separated; (3) that plaintiff was limited to Philadelphia County after default, and alleged that it was the intention of the parties that the rights conferred by the entry of judgment on the note were to be exercised in a normal fashion after a default had occurred.

The gravamen of defendants' petition is that since the bailment lease and judgment note were on one sheet of paper, when plaintiff separated the note, it materially altered the instrument and enlarged the liability assumed by defendants; this latter assumption is based on an alleged limitation on the power of plaintiff to exercise the rights which normally accrue to a judgment creditor. It is argued that without the separation of the note from the other documents, plaintiff could not have transferred or enforced the judgment outside of Philadelphia County, and therefore the entry of the note as separated, in any jurisdiction whatsoever, constituted a material alteration and forgery within the comprehension of that term in law. Plaintiff has denied defendants' construction of the agreement.

The facts are relatively undisputed, with an exception which will be noted hereinafter, and the agreement being in writing its construction is for the court. To construe a written contract we must determine what intention was manifested in writing by the parties, without reference to any actual intentions which may have existed but are unexpressed in the writing.

The agreement considered as a unit was composed of the following documents: A bailment lease with a note containing a warrant of attorney to confess judg-

ment on the same sheet of paper, financing statements, a schedule of equipment and a letter signed by defendants and plaintiff's then sales manager, Prepstein. Defendants' contention is that the above constituted an entire agreement no part of which could be separated from the other, and the separation of the note from the bailment, which plaintiff admits, constituted a material alteration. Plaintiff concedes that the agreement consisted of the above documents, but denies that the note and bailment lease were intended to be inseparable, and that the agreement, in its entirety, speaks for itself.

An examination of the bailment lease's printed provisions discloses that the first monthly rental was payable one month after date; the lease is dated June 29, 1955. On the reverse side of the bailment lease, the provisions of which were incorporated by reference, in paragraph 1 it is noted that the lessees would upon execution of the lease, make and deliver a promissory not as *collateral security*. (Italics supplied). "Collateral security" has been defined as a separate obligation attached to another contract to guaranty its performance: Bouvier's Law Dictionary. The same paragraph of the lease provided: "The discounting or negotiation of such note by Lessor shall not be construed as an acceptance of the note as payment . . , but said note shall be considered only as collateral security for the payment of the rental . . . ". Paragraph 10 of the lease contained a warrant of attorney for the confession of judgment upon the lease for unpaid rentals, or upon any note or notes remaining unpaid.

The note prescribed in paragraph 1 was executed by defendants; it was printed on the same sheet of paper as the bailment lease, but there was some blank space between the note and the lease so that upon separation each was a complete instrument in and of

itself. The note provided that defendants promised to pay $31,799.04, total of rentals and carrying charges, in 48 consecutive monthly installments, "the first payment on the *30th* day of *November*,*1955*". (The italics refers to portions that were typed, not printed). The printed warrant of attorney to confess judgment was exercisible only upon default. The tenor of the note precluded the entry of judgment until December 1, 1955, at the earliest. This warrant was replaced by the following indorsement on the back of the note:

"Any provision on the front of this note to the contrary notwithstanding, we hereby authorize the prothonotary or any attorney to appear for us and enter this note at once and before delivery of the leased goods and before any default by confession; provided that no execution will issue unless default is made by us."

The indorsement was executed by both defendants.

This indorsement removed the limitation on plaintiff's power to exercise the warrant of attorney by granting authority to enter the judgment of record immediately; it is to be noted that the warrant was specifically extended to permit entry of judgment without prior delivery of the leased goods. The indorsement contained no limitation on plaintiff's right to choose the jurisdiction in which it would exercise the warrant; it was coincident with the warrant in the note which authorized entry of judgment upon default in the United States or elsewhere, i.e., the entire world.

In the face of the broad and unlimited authority thus conferred, the parties then manifested an intention to limit the authority granted. The manifestation of this intention was set forth in the following language on a separate sheet of paper:

"Fogel Refrigerator Company,
5400 Eadom Street
Philadelphia, Pa.

"This is to authorize you to enter judgment on judgment note, signed in accordance with original Bailment Lease Agreement dated *June 29, 1955*, on which the total balance of rentals in $31,799.04.

"We are agreeable that judgment on this note be entered in Philadelphia County alone.

> "(sgd) Nuncie Oteri
> "(sgd) Claire Oteri
> "(sgd) Charles Prepstein
> (For) Fogel Refrigerator Co."

Defendants urge that this writing was a manifestation of the intention of the parties not only to limit plaintiff's authority to enter judgment, but, further, was a manifestation of the intent to narrow and constrict plaintiff's right of enforcement. An acceptance of this contention would require the reading into the writing a provision that under no circumstances could plaintiff enter or enforce the judgment in any county but Philadelphia. It is upon this construction that defendants rely to establish that the separation of the note from the lease amounted to a material alteration in that without the separation plaintiff could not have transferred the judgment, that this separation thereby enlarged defendants' liability under the contract, deprived them of rights thereunder and was fraudulent. We cannot accept this construction.

The inherent fallacy of defendants' position can be easily demonstrated; the argument rests on the implicit assumption that the judgment is unenforceable outside of Philadelphia unless transferred. If this assumption is false, as indeed it is, then defendants' contention must fall. The gravamen of defendants' complaint against plaintiff is not actually the entry of the judgment in Philadelphia, because they expressly authorized the entry. They complain rather about the manner of the entry in Philadelphia, rest-

ing on the mistaken assumption that if the judgment was entered with all of the documents which comprise defendants' exhibit "A", plaintiff could not have transferred or enforced the judgment outside of Philadelphia.

Unfortunately for defendants' position the law is to the contrary. A statute exists to meet this very situation. The filing of the necessary documents will allow the issuance of execution on a Philadelphia judgment to any county in the State. Upon proper order, the prothonotary will issue a testatum writ of execution: Act of June 16, 1836, P. L. 755, sec. 76, 12 PS §2631 et seq. This act makes a judgment enforceable in any county in the State without a transfer. We cite the above as an illustration to demonstrate the weakness of defendants' argument, not as the determinative factor.

Defendants' position cannot. be reasonably maintained because their argument meets the insurmountable barrier of a paramount canon of construction.

Preliminarily we note some of the attributes of a judgment. It is fundamental that a judgment generally includes among its perquisites the right to transfer; it can be said that judgments ordinarily are transitory. The right of transfer is not conferred by the debtor, but arises out of the judgment creditor-debtor relationship. If the parties in this relationship intend to restrict any of the perquisites which accrue because of the relationship, that intention must be unequivocally manifested. It has been held that the intention to diminish, curtail or deny any of the normal rights which accrue from a given relationship, must be manifested with the *greatest particularity*: Morton v. Ambridge Borough, 375 Pa. 630. (Italics supplied.) The writing relied upon as an expression of the intention must be construed strictly against the party seeking to invoke it: Ibid.

In Morton v. Ambridge Borough, supra, plaintiff sought damages for losses occasioned by the collapse of a sewer under his building. The instrument which had created the easement contained an exculpatory clause whereby the holder of the easement was not liable for damages which occurred "by reason of such construction, operation and maintenance" (of the sewer, etc.). The court held that the clause was a manifest intention to relieve the holder against damages for trepass quare clausam fregit by reason of an entry for the purpose of the constructing, operating and maintaining, but did not exculpate the holder of the easement against claims for negligence. The court noted that nowhere in the deed and the exculpation clause were the words "negligence", "negligent" or "negligently" employed. It was said that if it were the intention to insulate the holder of the easement against all claims, it had not been manifested, and the court could not supply the deficiency. The canon of construction thus stated destroyed the interpretation urged by defendants in that case because the action was based on negligence.

The application of the canon to this case can produce but one conclusion. The writing which defendants urge as a manifestation of the parties' intention to limit or curtail plaintiff's rights in the judgment falls far short of meeting the standard of greatest particularity. The raison d'etre of the principle shines through with crystal clarity upon reflection and consideration. Just as the law abhors forfeitures and penalties and enforces them with the greatest reluctance when a proper case is presented, so also the law regards warily writings which are said to express an intention that the normal rights in a given relationship are to be curtailed or in some fashion diminished. Such an intention properly expressed is enforceable,

but only when the quality of proof attains the standard of the greatest particularity.

We accept defendant's position that the agreement consisted of all the documents hereinbefore noted, but this does not require that we accept defendants' construction of the legal effect of the writings. As has been demonstrated, defendants' version flatly contradicts the writings which must be considered the manifest intention of the parties. Writings which comprise an agreement must be interpreted as a whole and the words employed must be given their ordinary meaning: Restatement: Contracts, §235. The function of the court is to determine the intent of the parties from the language used: Sanford-Day Iron Works v. Fancy Hill Coal Co., 321 Pa. 204. The actual intent of the parties where the contract is written, *is ineffective,* unless expressed: Paull v. Pivar, 161 Pa. Superior Ct. 233; 3 Williston on Contracts, §610. (Italics supplied.)

Defendants' position is untenable. Defendants' argument fails to establish the assumption that if the documents had been filed together when plaintiff caused the note to be entered, the judgment was rendered incapable of transfer. This contention begs the very question to be proved, namely, that the parties expressly prohibited transfer. In construing the contract it must be considered as a whole; the construction must give effect to the language "collateral security" as well as the other provisions of the bailment lease. We note in passing that there is present no language which would prevent a transfer after default.

It is not alleged, nor can it be assumed that defendants were induced to sign the documents by fraud, accident or mistake. Neither can it be assumed that defendants were ignorant of the meaning of the language used. It might be arguable from defendants'

point of view that the use of the word "entry" was not intended in the normal legal sense ascribed to the "entry of a judgment", as opposed to more explicit language including other attributes of a judgment, but rather was intended as an all-encompassing term. The word "entry" as a comprehensive term would include in its meaning not only the right to enter the judgment, but in addition the power of enforcement. The writings furnish the answer to the argument. It is an inescapable fact from the references in the writings that when "entry" was used it was intended to refer only to entry of the judgment, that when the parties were discussing satisfaction they employed the term "execution". Careful consideration leads inevitably to the conclusion that "entry" was used in its normal sense, i.e., entry of record.

The only reasonable construction of the writings is that the parties intended recording of the judgment to be an additional security device; at this point the necessity of execution to obtain satisfaction was a rather remote and relatively unimportant probability. That it was their intention to use the judgment as an additional security device is apparent when the indorsement is considered. Defendants, by that indorsement did not only replace the printed warrant, they also expressly prevented execution until default. It would be unreasonable to conclude that plaintiff was primarily interested in the necessity of execution to obtain satisfaction, and that defendants were primarily concerned with insulating assets from execution. Defendants' construction would place the last named intentions in a place of paramount importance in the face of negotiations which contemplated performance of a transaction which appeared to be profitable to all concerned. Defendants' interpretation implicitly denies that the normal expectation of a business transaction is performance, not breach. Defendants would

have the court reach an unreasonable result, a result which defies normal practice and expectations. The above is not to be construed as gainsaying the possibility of a breach, but the use of various security devices is designed to protect against the possible breach, if unfortunately one results.

Our construction of the entire agreement does not reveal the existence of any ambiguity which would warrant an inquiry into the surrounding circumstances for assistance in ascertaining the intention of the parties: Mowry Exr. v. McWherter, 365 Pa. 232. The construction does not yield an inequitable, absurd or unusual result: Percy A. Brown & Co. v. Raub, 357 Pa. 271. Manifestly the writings fall far short of the "greatest particularity" standard imposed in Morton v. Ambridge Borough, supra.

We can test the two interpretations against the language of the court in Percy A. Brown & Co. v. Raub, supra, at page 287, where it was said:

"Where the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred."

Measuring defendants' contention with the yardstick of the foregoing language it is to be noted that if the bailment lease had to be recorded with the note, the note was useless. It added nothing because defendants had already given a warrant to enter a judgment on a lease upon default. A prudent businessman would not enter into a transaction whereby he agreed to surrender the most powerful weapon in his arsenal, namely, execution against the property of his default-

ing customer. Obviously all parties realized that the use of the power of execution lies within the discretion of a judgment creditor, but the normal expectation must be a denial that it will be necessary to resort to a use of that power. Defendants' argument reaches a most unusual result.

Our construction of the writings effectively disposes of defendants' allegation of forgery. This allegation was raised despite an express agreement that judgment could be entered in Philadelphia County. The allegation could only have merit if defendants' construction were acceptable. The law is to the contrary.

Our interpretation renders the depositions taken in this matter completely unnecessary; defendants have attempted to create an ambiguity where none existed. We have examined the testimony offered to support defendants' version of the surrounding circumstances as an aid in determining the intention of the parties.

Prepstein, plaintiff's then sales manager of the Philadelphia division, and Higgins testified on defendants' behalf. Prepstein testified that Mr. Oteri did not want the judgment *recorded* in Delaware County. (Italics supplied.) Higgins occupied an equivocal position in this controversy by reason of an agreement to receive a portion of the commission from Fogel Refrigerator Company, and he had some connection with the Oteris by reason of his presence in their store cutting meat and dressed as a meat cutter normally would be dressed.

He testified that Oteri refused to sign the agreement until he received a writing that his property and home in Drexel Hill would not be attached as security or be used at any time to satisfy payment. He further testified that all of the documents were stapled together; Prepstein testified that the papers were not stapled when he, Prepstein, gave them to Oteri to

sign. Oteri, who was present at the depositions, did not testify.

The foregoing résumé is set forth to conclusively demonstrate the manner in which defendants failed to discharge the burden of proof. The above is all that defendants had to offer to support their version of the surrounding circumstances which would lead a court to accept their construction. To state the testimony is to indicate the inescapable conclusion.

A further rule of construction requires that one part of a contract cannot be so interpreted as to annul another part: Powell Appeal, 385 Pa. 467. Defendants' interpretation would annul the force and effect of the collateral security which they agreed to give. Our construction gives effect to the entire agreement and every part thereof.