## Synes Appeal.

Argued May 27, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Leon Ehrlich,* with him *Irwin Kins,* for appellant.

*Paul H. Edelman,* with him *Paul D. Edelman,* for appellee.

OPINION BY MR. JUSTICE EAGEN, October 10, 1960:

This action, tried in the court below without a jury, involved an appeal from an award of viewers in eminent domain proceedings. Exceptions to the court's decree were concerned only with the conclusions of law, the facts not having been in serious dispute. Said exceptions were dismissed and this appeal followed.

In June, 1952, W. Marshall Hughes submitted the highest bid for four hundred forty-four acres of land exposed at public sale by the Institution District of Berks County. An agreement of sale was drawn up and later approved by the quarter sessions court. On September 26, 1952, a deed of conveyance was delivered and recorded. The grantee in the deed was W. Marshall Hughes & Son, Inc.

On September 12, 1952, W. Marshall Hughes and his wife, Margaret, entered into a written agreement with Harry M. Synes, appellant, with reference to a proposed subsequent purchase by Synes of approximately fifteen acres of this same plot. While it appeared that Synes negotiated in an individual capacity, he did, in fact, represent an undisclosed principal, his employer, Food Fair Stores, and he intended to assign later all of his interest in the agreement to his principal.

This contract, designated "Agreement of Sale," specified a purchase price in the amount of $60,000; $9000

thereof to be paid upon the signing of the agreement, the balance to become due upon final settlement.

The land involved was subject to borough zoning regulations restricting its use to residential purposes only. The parties agreed to exert their best joint efforts to cause these zoning regulations to be lifted so as to permit the erection on the land of a large retail super-market and adjacent parking lot. It was at all times mutually understood that the land involved would remain perfectly unattractive to Synes, so long as it remained restricted.

No specific calendar date for final settlement was mentioned. The agreement (Par. 15) stipulated that, if the desired rezoning were effected and legally concluded, final settlement would be held within ten days thereafter and possession delivered immediately. If, however, (Par. 16) the rezoning efforts failed, either through lack of municipal action or court litigation, then Synes would have the option to purchase within twenty days *or* to consider the contract null and void and receive back the money already paid.

Efforts to effectuate the rezoning never succeeded and the matter remained in status quo.

On March 8, 1954, the Governor Mifflin Joint School Authority condemned a portion of the four hundred and forty-four acres of land owned by W. Marshall Hughes & Son, Inc., and also included in that condemnation was the entire plot involved in the Synes contract.

Viewers were appointed on September 20, 1954, and awarded W. Marshall Hughes & Son, Inc., damages in the amount of $110,000 and damages to Synes in the amount of $804. Synes appealed to the common pleas court. The joint school authority also appealed. On January 8, 1955, before trial, the authority paid to W. Marshall Hughes & Son, Inc., the sum of $100,000

in full settlement of its claim. On February 16, 1955, also before trial, appellant's $9000 down payment was returned to him by the escrow. On July 17, 1959, the lower court entered a decree denying Synes damages. It ruled, in effect, that he had held an option to purchase, which, if exercised, would have created an equitable estate in him but that his acceptance of the return of the down payment rescinded the agreement and cancelled his option.

Hence, the crux of this appeal lies in whatever rights, if any, passed to Synes by virtue of the agreement. He urges that the writing was an agreement of sale whereby he became the equitable owner of the land and that he enjoyed this status as of the date of the condemnation.

The pertinent principles of law are clear. In *Powell Appeal*, 385 Pa. 467, 473, 123 A. 2d 650 (1956), this Court said: "The right to damages for an appropriation of property by condemnation belongs to the owner thereof at the time of the taking and does not pass to a subsequent purchaser. This rule was clearly expressed in Kaufmann v. Pittsburgh, 248 Pa. 41, 46, 93 A. 779, where it is stated that 'The right to such damages is personal, belonging to the owners of the land when the entry and injury takes place, and the damages do not run with the land nor pass by subsequent conveyance of it although not specifically reserved.' "

After a contract for the sale of real estate is duly executed, the purchaser is the equitable owner thereof, entitled to all advantages that may thereafter arise, and responsible for all loss that may befall it. This legal principle, recognized early by this Court in *Reed v. Lukens,* 44 Pa. 200 (1863), has remained the law of the Commonwealth. It is based on the familiar maxim that equity regards that as done which has been agreed to be done, and which the parties to the agree-

ment have in their power to do. *Hess v. Vinton Colliery Co.,* 255 Pa. 78, 84, 99 Atl. 218 (1916). The parties to this appeal agree that the above legal principles govern its ultimate disposition but each differs as to the proper method of their application to this case. We believe each side has placed disproportionate stress on the legal significance of certain phrases in the agreement. We feel that in ascertaining the intent of the parties to the agreement its words should certainly be studied but that we must also look to what the respective rights of the parties were immediately prior to the act of condemnation. Was each party bound to the other? Was there a valid offer and, here more important, an unconditional acceptance? For all its technical language, did this agreement unconditionally bind the "Seller" to sell, the "Purchaser" to purchase? Could specific enforcement have been had?

In appellant's own brief, we find the following rather significant observation: "(P)aragraph 15 compelled Purchaser to complete the transaction *if the premises were zoned for such* (commercial) *use. . . .*"[1] They never were. We think that, when this agreement is examined in the light of the circumstances which prevailed at the time of its creation, it must be clear that, upon the happening of the contemplated rezoning, "Seller" would have been bound to convey and "Purchaser" to pay. That this is so we are assured by Paragraph 19 of the agreement which stated: "19. In the event the Purchaser fails to make settlement as herein provided, the sum or sums paid on account are to be retained either (a) as payment on account of the purchase price by Seller who shall have the right to collect the balance of said purchase price by suit in assumpsit or for specific performance. . . ." But, in the

---

[1] Emphasis, ours.

event that the borough either failed or refused to rezone the premises, then, as we saw in Paragraph 16, "Purchaser" could either, upon his election, go through with the agreement, as it were, or consider it void and of no force or effect. This was the situation just prior to the condemnation. There had never been a rezoning. This option which "Seller" extended "Purchaser" was clearly, therefore, still in operation. Certainly, absent a rezoning, "Purchaser" was not *bound* to do anything.

An option is both itself an enforceable agreement and an offer. The latter is intended to be accepted by notice from the optionee of his election to accept. This Court in *Cardon's Estate,* 278 Pa. 153, 158, 122 Atl. 234 (1923), repeated language earlier used by it on this point when it said: " 'An option is an unaccepted offer to sell and convey within the time fixed and upon the conditions set forth in the written agreement . . . . (It) is a unilateral agreement, binding upon the optioner from the date of its execution, but does not become a contract inter partes in the sense of an absolute contract to convey on the one side and to purchase on the other until exercised by the optionee': Barnes v. Rea, 219 Pa. 279, 284, 285; McBride's Est., 267 Pa. 250."

In 12 Am. Jur., Contracts, §27 (1938) the following analysis appears: "The view is taken that the option consists of two elements, one, the offer to perform a certain act, such as to sell property, which is an uncompleted contract until it is accepted, and the other, the agreement to give the optionee a certain time within which to exercise his option of accepting."

On the basis of the above authorities and after a careful reading of the agreement itself and a review of the relative rights and obligations of the parties just prior to the condemnation, we hold that, there having

been no obligation on Synes' part to purchase because of the failure of the borough to rezone, all Synes had was an option, a continuing offer which terminated upon the condemnation of the subject premises by the school authority, the condemnation itself having rendered an exercise of the option to purchase impossible. Despite the failure to rezone, Synes had never elected to purchase. Not having elected to purchase, he did not accept the offer implicit in the option, the offer by Hughes to sell. The agreement between Hughes and Synes was not, therefore, sufficient in law to work an equitable conversion of the realty in question. Consequently, legal and equitable title to the land remained in Hughes and Son, Inc.

However, a claim by appellant is also made against appellee authority for damages sustained by him because of the loss of his right to elect to purchase. In other words, as of the date of condemnation, Synes could still have hoped, but for the condemnation, for a future rezoning. In the absence or failure of a reclassification, he could nevertheless have elected to purchase. But the condemnation prevented this and, therefore, destroyed a valuable right he possessed. At the trial, he repeatedly attempted to offer testimony with respect to the value of the land. This was rejected because he lacked title to the premises. He was advised that he could give testimony with respect to the value of the *option* he had held and which the condemnation had destroyed. The lower court concluded that Synes should receive nothing for this loss because (1) by accepting the return of his purchase money, "down payment," he had elected to consider the agreement void and (2) he adduced no proof at the trial of its worth. We cannot agree that the acceptance of the return of the $9000 down payment worked an election to cancel the agreement. His acceptance of this money took place

a considerable time after the act of condemnation. Furthermore, the condemnation of the property having made an affirmative exercise of the option impossible in any event, appellant could do little else but get his money back. He didn't elect to purchase, it is true; but he didn't elect to cancel, either. The condemnation caused the loss of his right to elect to purchase. Surely, this must have possessed some value—it took a $9000 down payment to secure it!

We accordingly remand this case for a hearing limited to a determination of the value the option, as such, possessed.

Judgment reversed and record remanded with a procedendo.

Mr. Chief Justice JONES, Mr. Justice BELL and Mr. Justice BOK would affirm the judgment of the court below.