## Central Bucks School District v. Property in Warwick Township

*Samuel G. Moyer,* for petitioners.

*Donald R. Price,* for respondent.

BECKERT, J., April 16, 1968. — We are here confronted with a novel question arising from the following undisputed factual situation:

Herman Samuels and Jean Samuels, his wife (petitioners) were the record title owners of 58.275 acres (58) of land located in Warwick Township, this county. Central Bucks School District (Central), pursuant to statutory authority, condemned all 58 acres of the aforementioned land for purported school purposes. Central's declaration of taking was duly filed with the prothonotary on February 28, 1967. On a later date, namely, May 29, 1967, pursuant to section 522 of the Eminent Domain Code of June 22, 1964, P. L. 84, art. 5, sec. 522, 26 PS §1-522, Central was granted permission to pay $110,000, the condemnor's estimate of just compensation less the outstanding balance due on an existing first mortgage, $39,124.35, into court. The prothonotary, on July 26, 1967, was directed to place

the remaining balance, namely $70,875.65, in five local savings institutions.

At the date of the condemnation, there was pending in this court an equity action commenced on May 26, 1966, by Meyer C. Rose (respondent) wherein the respondent averred that 54.275 acres (54) of the 58 acres previously owned by petitioners were under an agreement of sale to him for $58,000. This equity action has not been adjudicated, nor is it ripe for hearing at the present time.

The instant question before this court arises by virtue of petitioners' rule to show cause and the responsive pleadings filed thereto. Petitioners presently seek to have made absolute a rule in their favor directing the payment of $58,000 of the just compensation moneys to them.

The main thrust of petitioners' argument is that to permit the estimated just compensation fund to remain on deposit will, and already has, worked a great hardship on petitioners. In short, petitioners rely on section 407 of the Eminent Domain Code of 1964 and on the comments of the Joint State Government Commission thereto, to the effect that the condemnee in appropriate cases of hardship may receive pro tanto payments from the condemnor before final award of judgment.

To support the hardship contention, Herman Samuels, one of the copetitioners, was deposed. In capsule form, his deposition reveals that he is 52 years of age, married and the father of three boys, ages 15, 16 and 19. He has been retired since 1961 for reasons of health. Prior to retiring, he sold certain real estate for approximately $175,000, investing the proceeds, and perhaps other funds, in fixed income mortgages, 80 percent, and mutual funds, 20 percent. Deponent's present income is $9,000 to $10,000 a year, derived solely from these investments. Notice to vacate the con-

demned premises has been given, effective date January 1, 1968. Pursuant thereto, petitioners have purchased land for approximately $7,800 and further secured a loan from the Doylestown National Bank in the amount of $25,000 in order to construct a dwelling thereon. This loan is secured by 80 to 90 percent of the mutual funds. Deponent estimates that the total cost of the lot and structure to be erected thereon will be beween $35,000 to $40,000. Samuels believes his net worth to be approximately $200,000; that he has no outstanding obligations or debts other than the aforementioned $25,000 loan. The copetitioner does not desire to dispose of the mortgage investments or the unpledged mutual funds, believing the same to be imprudent, as these investments are the sole source of the family income, and the fact that the mutual funds were acquired and are retained for the purpose of financing the education of all three children.

At this juncture it would appear appropriate to point out that no allocation was made of the estimated just compensation payment, which was paid into court, between the 54 acres subject to the equity suit and the four acres on which was situate petitioners' dwelling with a two and one-half car garage, a barn, a carriage house, a chicken house and a tool shed.

An independent examination of the Bucks County assessment records indicate that the 1967 assessment on the entire tract was as follows: Land $5,400; improvements $5,000; making a total of $10,400. The value of these figures consists solely of the fact that the assessor's opinion was that the improvements on the tract had a fair market value of $16,667, using the 30 percent rule. We cannot conceive how the assessor's calculation as to the value of land has any probative value in that the estimated just compensation paid by the condemnor is many times the value placed upon the entire tract by the assessor.

It is necessary, at some point, if a final result is to be reached in this matter, to enter the circle, and we do so by presuming, for the purpose of this opinion only, that respondent has an enforceable contract for the sale of petitioners' 54 acres of land. Once that assumption is made, the existing law supports the proposition that a purchaser under a binding agreement of sale, at the time of taking, clearly has a claim for damages for the taking of his equitable interest therein: Butler County Commissioners' Petition, 141 Pa. Superior Ct. 597. After a contract for the sale of real estate is duly executed, the purchaser is the equitable owner thereof, entitled to all advantages that may thereafter arise and is responsible for all losses which may befall the property: Synes Appeal, 401 Pa. 387. The Synes case involved a situation where there was a holder of an option at the time the declaration of taking was filed. There, it was held that when a contract is made for the sale of land, equity considers the vendee as the purchaser and the vendor as the seller. The purchaser becomes a trustee for the vendor for the purchase money. The court therein cited with approval Hess v. Vinton Colliery Company, 255 Pa. 78, 83, which held that so much is the vendee considered, in equity, as actually seized of the estate that he must bear any loss which may occur to the estate between the date of the agreement and the conveyance, and he will be entitled to any benefit which may accrue to the property during that interval, because by the contract he is the owner of the premises to every intent and purpose.

Therefore, in accepting this assumption, and we do accept it for the purpose of disposing of this petition, respondent would be entitled to the entire amount of the condemnation award for 54 acres. The respondent-vendee would, of course, have to pay to petitioners-vendor the agreed price of $58,000. The estimated just

compensation paid into court, as previously stated, made no allocation of the $110,000 amount between the land and the improvements thereon. As noted, the assessor of this county has placed upon the improvements the fair market value of $16,667. For the purpose of our calculations, we will also assume that the assessor's valuation of the improvements is correct, and thereby in so accepting this valuation of the improvements to be correct, it would follow that petitioners would be entitled to $58,000, plus $16,667, plus the value of the remaining four acres. The mortgage of petitioners on the entire tract, as of the time of the taking, has been paid in full. If the mortgage pay-off figure, $39,124.35, is subtracted from the minimum amount due to petitioners, that is, $74,667, the remainder figure is $35,542.65. We cannot, however, accept the value placed upon the land by the assessor, it being definitely demonstrated to be far below the fair market price. This fact is certainly evidenced by the amount of the estimated just compensation as computed by the condemnor. Nor can we, based upon the evidence available from the present record, arrive at any method for making a per acre valuation of the remaining four acres. Therefore, the value of these four acres does not enter into our determination of the amount which should be distributed to the petitioners.

Assuming the aforesaid sum of $35,542.65 represents a minimum amount that can be paid to petitioners, do we have any authority to direct such payment?

As previously stated, the condemnor, pursuant to authority conferred upon it, paid the estimated just compensation into court. Section 522 of the Eminent Domain Code of 1964, after allowing such payment into court, additionally provides as follows:

"The court thereafter upon petition of any party in interest shall distribute such funds or any funds de-

posited in court under section 407(1) to the persons entitled thereto in accordance with the procedure in section 521 . . ."

Section 521 of the code has no applicability in this situation, because it deals with the payments of liens, mortgages against the property and municipal claims and liens for taxes thereon. It is section 407 which may have a bearing upon our problem. The comment contained in the Joint State Government Commission report of 1964, which follows section 407 of the Eminent Domain Code of 1964, states:

"The purpose of this section [which entitles a condemnor to take immediate possession of a condemned tract upon payment into court of estimated just compensation] is to prevent hardship which occurs in many cases when the condemnor takes possession and the condemnee, who is not satisfied with the offer of the condemnor, must give up possession and relocate elsewhere. In such cases, the condemnee may have difficulty in obtaining other property because of lack of funds".

Section 522 of the act does not contain any comment of the Joint State Government Commission pertaining to this issue, but the reasoning, however, should be identical with that contained in the comment to section 407. The purpose of the estimated just compensation is two-fold. First, to enable the condemnor to toll the running of interest and, secondly, to benefit the condemnee so as to not deny the condemnee the use of the proceeds of the condemnation until the final amount due is judicially determined.

The briefs submitted by counsel for the parties do not contain a single case citation which holds that we are authorized to, or not authorized to, make distribution of the moneys held by the prothonotary in a situation as here presented. Our independent research has likewise been sterile. We are, however, firmly con-

vinced that payment can be made into court pursuant to the applicable section of the Eminent Domain Code where there is a dispute as to the distribution of the award: Commonwealth v. Holt, 30 Fayette 78. It would follow, therefore, that we have the discretion to disburse funds pending a determination of who is entitled to the various portions when it is clear, (1) that a hardship will result from a failure to so disburse and, (2) where the minimum due one party is already determined. We find as a fact that a hardship does exist in favor of petitioners. We also conclude that the payment of $35,542.65 is a minimum dollar amount which petitioners would be entitled to receive even assuming that they were unsuccessful in defending the pending equity action. The only possible element of uncertainty which we can envision exists in accepting the $16,667 figure as representing the value of the improvements. It is difficult to conceive that a house with a two and one-half car garage, a barn, a carriage house, chicken house and tool shed and the land consumed thereby would not, in today's market, have a fair market value in excess of that figure.

Petitioners have attempted to present two other matters for our determination, namely, the certification of the pending equity action to the law side of the court and the removal of the lis pendens filed against the real estate in the pending equity action. We do not find that either of these matters have been properly raised by the pleadings and, therefore, are not before the court for our consideration and ultimate disposition.

Accordingly, we enter the following

ORDER

And now, April 16, 1968, the Prothonotary of Bucks County is ordered and directed to disburse to Herman Samuels and Jean Samuels, his wife, from the fund of $70,875.65 on deposit at interest, the sum of $35,542.65.

The prothonotary is directed to withdraw $7,108.53 from each of the five savings accounts as enumerated in the order of this court dated July 27, 1967. The withdrawal of the aforementioned amounts shall not be made until on or after May 13, 1968, and disbursement to Herman Samuels and Jean Samuels, his wife, shall not be made until May 20, 1968, unless an appeal be filed by respondents in the interim and, in such case, there shall be no withdrawal or disbursement pending the ultimate disposition of said appeal.