## Re Condemnation By
## Central Bucks School District

[redacted]

*Thomas F. J. MacAniff,* for condemnor.
*Robert M. John,* for vendors.
*Richard A. Rosenberger,* for purchaser.

BODLEY, *J.,* June 21, 1977 — In this condemnation case the board of view, after hearing, awarded general damages of $29,000 to the condemnees, of which $23,600 was allocated to David Bauer as trustee for the sellers of the land in question, and $5,400 to Frank Leeland, intended buyer of a portion of the condemned premises under an agreement of sale executed in April 1969. The only issue to be determined by the court at this time, pursuant to section 517 of the Eminent Domain Code of June 22, 1964, P.L. (Spec. Sess.) 84, 26 P.S. §1-517, is the question of whether or not the board erred in awarding Frank Leeland a portion of the damages. Since the issue is determinable upon the record submitted before the board of view, no further testimony was offered and the legal question has been argued before a court en banc.

The issue is a novel one, growing out of an agreement of sale prepared by Leeland, a real estate broker and developer, ostensibly for the signature of John F. Graczyk and Gertrude J. Graczyk, his wife, as sellers, and Frank H. Leeland as buyer. As the record will reveal the agreement is dated "April      1969," without specific date, and was signed by Gertrude J. Graczyk and Leeland. John F. Graczyk did not sign the agreement. Of the total 26.604 acres owned by sellers, the agreement provided for the sale of 24 acres thereof to Leeland for the sum of $24,000 payable $1,000 at the execution of the agreement, $5,960 in cash at the time of settlement with the balance of $17,040 in the form of a purchase money mortgage to be held by the Graczyks and to be paid in three specified annual installments. No time for settlement was fixed in the agreement, however a paragraph inserted by Leeland provided "settlement is to be held at a mutually satisfactory date within 30 days of the final approval of the subdivision plans."

Paragraph 12 of the agreement provided: "It is agreed that Buyer shall promptly prepare and process subdivision plans for the subject tract (the 24 acres) in addition to two adjoining lots which are marked as Lot A and Lot B on the attached plan." Paragraph 13 provides: "Title to Lots A and B shall remain in Seller but said lots shall be shown on Buyer's subdivision plan, and Buyer agrees to use his best efforts to have the entire subdivision plan approved by Warrington Township and Bucks County as quickly as possible." In addition, under Paragraph 15 it is provided that a proposed fifty-foot entrance driveway off Folly Road "is to be paved the entire width of Lots A and B at no cost to Seller." A further paragraph provided a so-called

"Schedule of Payments and Releases" revealing the intention of the parties that the sum of $6,960 was to be paid during the year 1969 in exchange for the release of 5 acres of ground; $6,960 in 1970 for the release of an additional 7 acres; $6,960 in 1971 for the release of 8 more acres, and $3,118 in 1972 for the release of the remaining four of the 24 acres subject to the agreement.

It appears from the record that no down payment was made at the time of the execution of the agreement of sale as provided therein but that some time in June of 1969, a so-called "paper settlement" was held at Chelsea Title Company at which time Leeland paid the sum of $1,000, presumably for legal fees, to counsel then representing the sellers. During such settlement a deed was executed by both Graczyks to be held by the title company until Leeland accomplished his purpose of securing approval of subdivision plans. The deed has never been delivered or recorded. It also appears that Gertrude Graczyk approached Leeland during the late summer of 1969 with a request that he advance the sum of $400 to enable her to pay real estate taxes. This was done. No other payments were ever made by Leeland to the seller. A year later, on July 8 and again on July 29, 1970, counsel for the sellers wrote Leeland advising him that the agreement would be declared null and void unless settlement was made on or before July 31, 1970. Leeland did not respond to the demand. Nor has he ever received approval of the subdivision plan contemplated in the agreement of sale.

On September 26, 1970, Central Bucks School District condemned the entire tract of land for school purposes, thus making moot the question of

the proposed subdivision and further pursuit of the same, but giving rise at the same time to the issues now before us. Leeland maintains that as equitable owner under an agreement of sale he is entitled to receive that amount of the award which exceeds the $24,000 he had agreed to pay for the real estate. The board of view agreed, awarding but $23,600 to sellers after crediting Leeland with the $400 advanced, and awarding the balance to Leeland.

On April 18, 1969, Leeland presented his first proposed subdivision plan to Warrington Township. Two revisions, one on July 21 and another on July 30, 1969, were also filed. None of these were approved. On April 16, 1970, a new plan was submitted, as distinguished from the revisions of the original plan. Following consideration of the new plan, the township supervisors, on June 9, 1970, advised Leeland that before the plan could be approved certain changes would be necessary. These included a change in the cartway of a proposed street, a change in the future cartway of Folly Road, a plan revision which would indicate that portion of the land which is subject to flooding, the grant of an easement to the township along the creek flowing through the property, and a twenty-five feet easement along the length of an 18" storm drain pipe required to take water from a cul-de-sac to the creek. In addition to these conditions the township further required as a prerequisite for approval that the creek be "riprapped," meaning that large stones of the kind which could be handled only by a crane for lifting and placement were required to be placed along the creek to prevent erosion and ponding in the area. From the date on which he received these conditions until the date

of condemnation, more than three months later, Leeland took no action toward meeting the requirements for subdivision approval. To the contrary, upon learning of the riprapping requirement he advised the township manager that the same would be too expensive and would not permit him to proceed in a financially feasible way.

It is generally true, as maintained by Leeland, that following the execution of a contract for the sale of real estate the purchaser, in law, becomes the equitable owner of the land. As such he is entitled to all the privileges and benefits which may accrue to the land thereafter and bears the burden of any detriment as well: Reed v. Lukens, 44 Pa. 200 (1863). It is also true, as urged, that when a condemnation occurs following the execution of an agreement of sale, the vendee, not the vendor, benefits from any gain realized over the selling price: Butler County Commissioners' Petition, 141 Pa. Superior Ct. 597, 15 A.2d 504 (1940). The vendee, as equitable owner, is thus usually entitled to the proceeds of a later condemnation less any sum remaining due the vendor. But Leeland overlooks the fact that where one has an agreement to purchase, as here, which is subject to a condition precedent the accomplishment of which lies outside the control of the buyer or seller, both legal and equitable ownership remain in the seller. In such case the purchaser under the agreement of sale does not become the equitable owner, and, a fortiori, is not entitled to any gain which may be realized from a subsequent condemnation: Syne's Appeal, 401 Pa. 387, 164 A.2d 221 (1960).

In Bauer v. Hill, 267 Pa. 559, 562, 110 Atl. 346 (1920), the general principle was stated in this fashion: "Whenever an *unconditional* agreement

has been made for the sale of land, *such as equity will specifically enforce,* it may properly be referred to and treated as sold; then the vendee becomes the equitable owner and the vendor holds the legal title as trustee." (Citations omitted; emphasis supplied.) Was this agreement unconditional? Would equity have specifically enforced it? The answers must be no. It is to be remembered that the power to grant specific performance is a discretionary one, that the granting of ". . . such a decree is of grace and not of right . . ." Payne v. Clark, 409 Pa. 557, 561, 187 A.2d 769 (1963). If under the facts of the case, specific performance would be inequitable and unjust it will not be granted: Barr v. Deiter, 190 Pa. Superior Ct. 454, 154 A.2d 290 (1959).

More recently, in Byrne v. Kanig, 231 Pa. Superior Ct. 531, 535, 331 A.2d 472 (1974), the principle was restated. The court said: "It is well established in Pennsylvania that when an *unconditional* agreement for the sale of land is signed, the purchaser becomes the equitable or beneficial owner through the doctrine of equitable conversion. The vendor retains a mere security interest for the payment of the unpaid purchase price . . ." (emphasis supplied), citing DiDonato v. Reliance Standard Life Insurance Co. 433 Pa. 221, 249 A.2d 327 (1969); and Payne v. Clark, supra. Once again the emphasis is necessarily upon the word "unconditional," for if there is a condition precedent to a binding agreement there can be no firm enforceable contract of sale until that condition is met.

Implicit in these holdings is the converse; that is to say, where the agreement is a conditional one, to become binding and enforceable by specific performance only upon the happening of an event not

within the control of the parties, there can be no equitable conversion. In such case the equitable as well as the legal title remains with the vendor: Syne's Appeal, supra. It follows that when condemnation occurs prior to the fulfillment of a condition precedent, thus making completion of an intended sale of real estate impossible, the vendee under such an agreement can have no pecuniary interest in the damages awarded for the condemnation. The vendee simply is not a condemnee.

Applying these principles, it is at once obvious that specific performance of the agreement here would no more readily have been granted the moment before condemnation than the moment following execution of the agreement. The agreement *required* that there be an approved subdivision separating the land to be conveyed from that to be retained. That subdivision approval was never obtained and quite possibly never could have been obtained on terms acceptable to Leeland. The agreement remained a conditional one throughout its existence, no matter were it to be determined that its life ceased on July 31, 1970, when Leeland refused to settle, or whether it were deemed to have expired upon condemnation.

As in this case the agreement in Syne's Appeal, supra, fixed no specific calendar date for final settlement. Rather, it was provided that settlement would be held within ten days following the purchaser's hoped-for success in his efforts to secure a change in zoning of the tract in question. There as here, when condemnation occurred more than a year following the signing of the agreement of sale the buyers' efforts to meet the condition (in Syne's, to secure a change of zoning) had not succeeded. In determining the respective rights of the parties

immediately prior to condemnation the court inquired: "Was each party bound to the other? Was there a valid offer and, here more important, an unconditional acceptance? For all its technical language, did this agreement unconditionally bind the 'Seller' to sell, the 'purchaser' to purchase? Could specific enforcement have been had?" Syne's Appeal, at p. 392. The court held that only upon the happening of the intended rezoning would the seller have been bound to convey and the purchaser be obliged to pay over the balance of the consideration. It concluded that at the time of condemnation there was no obligation on the part of the buyer to complete the purchase agreement because of his having failed to secure the rezoning, just as there was no right on the part of the seller to sue and recover the purchase price. The court held that the agreement was not sufficient in law to work an equitable conversion of the realty in question. Here the same conclusion must be reached.

It must be remembered that the entire 26.2 acres of the sellers was condemned. Leeland had agreed to purchase but 24 of those acres and as one of the considerations for the agreement had undertaken to set aside for the benefit of sellers lots denominated A and B on the subdivision plan, approval of which he had of course contemplated. An additional consideration was the paving of a fifty-foot entranceway off of Folly Road for the entire width of the proposed lots A and B. Neither of these considerations could be met, of course, without subdivision approval. While perhaps Leeland had a greater capacity to direct and control the possible approval of the proposed subdivision, were he able to meet township requirements, than had the pur-

chaser in Syne's Appeal, supra, who was dependent upon the municipality's discretionary agreement to re-zone the tract question, nonetheless ultimate approval within the standards and under the conditions laid down by the supervisors, with the aid of its planning commission, was a matter which rested in the hands of the governing body. Under the agreement which he had prepared, Leeland was under no obligation to make settlement until following final approval of the plans. He was given the opportunity to purchase nonetheless, but reasonably chose not to do so when informed of the July 31, 1970, settlement date. We need not speculate as to whether or not Leeland would have further pursued his subdivision efforts after being faced with conditions which he deemed too expensive to make the planned project economically feasible inasmuch as condemnation did in fact take place before the accomplishment of his intended subdivision approval. As of the date of condemnation there remained the possibility that the intended subdivision plan might never be approved and under these circumstances, as in Syne's Appeal, we must hold that there was no equitable conversion. See also Filsam Corp. v. Dyer, 422 F. Supp. 1126, 1133 (E.D. Pa. 1976).

Although Leeland has argued that the agreement of sale remained effective on the date of condemnation in view of the efforts which he had made prior thereto toward accomplishment of the subdivision approval, we find no need to discuss this question in view of our holding that as of the time of condemnation he was nonetheless not an equitable owner of the tract condemned. As noted heretofore, at best he arguably retained a right

under the agreement of sale to demand conveyance of 24 acres of the whole only after he gained the approval sought. Nor need we turn to the sellers' counter-argument that the agreement became null and void as of the date of the demanded settlement on July 31, 1970, in view of our determinative holding herein.

Leeland's argument that the sellers waived their right to insist upon adherence to the condition calling for subdivision approval by their execution of the deed at the so-called paper settlement is entirely without merit. We cannot agree, as urged by Leeland, that the sellers divested themselves of title during this transaction held for the benefit of Gertrude Graczyk, then experiencing marital difficulties, and joined in by her then husband John Graczyk. Clearly there is no merit in such an argument. The determination of the rights and interests of the parties as of the date of condemnation must be controlled by the legal significance of the agreement of sale itself.

## ORDER

And now, June 21, 1977, the appeal of the condemnees is sustained insofar as it pertains to the decision of the Board of View that Frank H. Leeland is entitled to any portion of the damages to be awarded the condemnees. The appeal of condemnees David A. Bauer and Gertrude Graczyk from the amount of the award of damages fixed by the board of view shall be disposed of in due course upon trial of the issue by a jury. The appeal of Frank H. Leeland as a purported condemnee is hereby dismissed for lack of standing.