**In Re: CONDEMNATION BY the COUNTY OF BERKS, a Third Class County, of Lands and all Improvements thereon for Public Recreation Places and Public Parks, Situate in the Township of Alsace and Lower Alsace, Berks County, Pennsylvania**

**Appeal of: M.B. Investments.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2006.

Decided Jan. 9, 2007.

William F. Fox, Jr., Audubon, for appellant.

Jerry R. Richwine, Reading, for appellee.

BEFORE: SMITH–RIBNER, Judge, and PELLEGRINI, Judge (P.), and FRIEDMAN, Judge.

OPINION BY Judge FRIEDMAN.

M.B. Investments (MB) appeals from the May 17, 2006, order of the Court of Common Pleas of Berks County (trial court) dismissing MB's preliminary objections to a declaration of taking filed by the County of Berks (County), a third class county, and sustaining the preliminary objections filed by the County. The trial court ruled that for purposes of the Eminent Domain Code (Code),[1] MB lacked legal standing as a condemnee to raise the preliminary objections. We affirm.

For more than a century, the City of Reading (City) has owned a 560–acre property located in the County known as the "Antietam Lake Property" (Property). For some time, the City has utilized the Property as an open space recreation area and part of the City's water supply system. Because the Property needed substantial and costly repairs and improvements, the City considered MB's proposal for a private-public partnership with respect to the Property.

On November 28, 2005, the Reading City Council (City Council), by a vote of four to three, passed Resolution No. 109– 2005, which approved an option agreement between the City and MB regarding the Property. (R.R. at 29a–53a.) The option agreement granted MB an irrevocable option to purchase a tenancy in common ownership interest with the City in the Property for $2,500,000 and required MB to make additional expenditures to improve and repair the Property. A restrictive conservation easement prohibited development on the Property unrelated to operation or maintenance for a period of twenty years from the execution of the option agreement in order to preserve the Property's use as an open space recreational area. The option agreement required MB to make the $2,500,000 option payment no later than December 20, 2005.[2] Once that payment was received by the City, MB would have the right to exercise the option at any time within the twenty-year period by giving written notice to the City and paying the consideration of one dollar, at which point the City would adopt an ordinance to convey the Property to MB and the City as tenants in common. (R.R. at 31a–37a, 46a.) MB's General Partner signed the option agreement on behalf of MB on November 29, 2005; however, the mayor refused to sign on behalf of the City and, as a result, the option agreement was never fully executed.

---

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended, formerly* 26 P.S. §§ 1–101–1–903, repealed by section 5(2) of the Act of May 4, 2006, P.L. 112 (Act 34). Section 1 of Act 34 enacted the consolidated Eminent Domain Code, 26 Pa.C.S. §§ 101–1106, effective in 120 days. Although repealed and replaced by Act 34, the former Eminent Domain Code governs this case because, with certain exceptions not applicable here, Act 34 applies only to condemnations effected on or after its September 1, 2006, effective date. *See* section 6(1) of Act 34.

2. Paragraph 3 of the option agreement states, in relevant part:

CONSIDERATION: In consideration of the implementation of the public/private partnership between the City and MB and the grant of the Option rights identified herein, MB agrees as follows:

(a) Option Payment: MB shall pay to the City the sum of Two Million Five Hundred Thousand Dollars ($2,500,000) which sum shall be payable to the City by check and *shall be paid no later than December 20, 2005 (the "Option Payment"). The Commence date of the Agreement shall occur on the date the Option Payment is received by the City.*

(R.R. at 31a) (emphasis added).

On December 8, 2005, relying on Resolution 109–2005, MB and four City Council members filed a complaint in mandamus and a motion for peremptory judgment with the trial court, seeking to compel the mayor to execute the option agreement on the City's behalf. The trial court denied mandamus relief and, on appeal, this court affirmed. *M.B. Investments v. McMahon*, 903 A.2d 642 (Pa.Cmwlth.2006). In doing so, we agreed with the trial court's holding that the option agreement constitutes an equitable conveyance of City land and a *de facto* sale of the Property which, under the City's Charter and Administrative Code, required City Council approval by ordinance subject to the mayor's veto and could not be accomplished by resolution. Thus, we held that MB had no clear right to have the mayor execute the option agreement. *Id.* MB and the four City Council members have petitioned the Supreme Court for allowance of appeal,[3] and the Supreme Court has yet to rule on the petition request.

On December 15, 2005, the County filed a declaration of taking pursuant to section 402 of the Code, 26 P.S. § 1–402, condemning the Property for use as a public recreation place and park. (R.R. at 3a–10a.) County Resolution No. 429–05, attached to the declaration of taking, mandates that the title to be acquired by condemnation "shall be fee simple absolute title, including all improvements, rights-of-way, leases and options and any other real property interests of whatever nature. . . ." (R.R. at 6a.) The County did not list MB as a condemnee in the declaration of taking,

although other optionees were named. (R.R. at 8a–9a.)

Nevertheless, within the thirty-day limitation period, MB filed preliminary objections to the County's declaration of taking pursuant to section 406(a) of the Code, 26 P.S. § 1–406(a), asserting standing to do so as the optionee under the allegedly enforceable option agreement. In its preliminary objections, MB contends that the County's condemnation of the Property is unlawful because section 2401 of The County Code[4] only authorizes the County to condemn *private* property and because a governmental body cannot condemn public property that already is being used for a public purpose. (R.R. at 11a–18a.) The County's condemnation was otherwise unopposed. Thereafter, the County filed preliminary objections to MB's preliminary objections. (R.R. at 22a–27a.)

■ Following a hearing, and based on this court's prior holding in *M.B. Investments*, the trial court determined that MB had no ownership interest in the Property as either an equitable owner or an optionee, and, thus, MB had no standing to file the preliminary objections. Alternatively, the trial court held that MB's preliminary objections lacked merit because, contrary to MB's claims, neither the Code nor section 2401 of the County Code prohibited the County from condemning public property for a purpose similar to that which the property already served. Accordingly, on May 17, 2006, the trial court entered an order that dismissed MB's preliminary objections to the County's declaration of taking and sustained the County's

---

3. MB's position is that the option agreement is not a conveyance of property or even an agreement for the sale of property until such time as the option is exercised, and, thus, the option agreement can be approved by resolution under the City Charter and Administrative Code.

4. Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 2401. That section provides, "In all cases where the power of eminent domain is conferred upon the county by law, the county may enter upon, appropriate, take, injure or destroy *private* lands, property or material." (Emphasis added).

preliminary objections. (R.R. at 92a.) Thereafter, MB appealed to this court.[5]

■ MB argues that the trial court erred in concluding that MB lacked standing to file preliminary objections to the County's declaration of taking. We disagree.

■ Preliminary objections are the exclusive vehicle for a condemnee to challenge a taking under the Code. Section 406(a) of the Code, 26 P.S. § 1–406(a). As defined in section 201 of the Code, "Condemnee means the owner of a property interest taken, injured or destroyed, but does not include a mortgagee, judgment creditor or other lienholder." 26 P.S. § 1–201. The definition of condemnee is also intended to include holders of options. *See* comment to section 201 of the Code.[6] However, it is axiomatic that to assert the rights of a condemnee, the party must be an owner of a property interest taken. *In re Condemnation by Commonwealth of Pennsylvania, Department of Transportation, of Two (2) Billboards Located on T.R.209*, 69 Pa.Cmwlth.545, 452 A.2d 81 (1982).

MB concedes that, currently, it has no ownership interest in the Property; however, MB contends that as an "optionee" under the as yet unexecuted option agreement, it has "potential" standing to file preliminary objections under section 406(a) of the Code, 26 P.S. § 1–406(a). In paragraph 17 of its preliminary objections, MB acknowledges that its final rights as a condemnee under the Code are dependent on MB prevailing in its mandamus action regarding the validity and enforceability of the option agreement. (R.R. at 14a.) According to MB, if the Supreme Court grants its petition for allowance of appeal in the mandamus action, and if, thereafter, MB is successful before the Supreme Court, MB will have the requisite standing of a condemnee to file preliminary objections to the County's condemnation of the Property.[7] MB asserts that this court has a duty to protect these potential rights, and MB asks that until it is finally determined whether MB is an optionee under the option agreement (and thus a condemnee under the Code), this court either: (1) hold our decision in abeyance pending a decision by the Supreme Court (assuming that we find merit in MB's preliminary objections); or (2) extend the time for filing preliminary objections until MB's appeal to the Supreme Court is concluded, *see* 26 P.S. § 1–406(a). We are not persuaded by MB's argument.

First, we agree with the trial court that because, under *M.B. Investments,* the mayor cannot be required to sign the option agreement, MB will be unable to acquire an ownership interest in the Property. Moreover, even assuming that MB

---

5. In an eminent domain proceeding where the trial court has sustained or overruled preliminary objections to a declaration of taking, our scope of review is limited to determining whether the trial court committed legal error or abused its discretion. *In re Condemnation by County of Allegheny,* 861 A.2d 387 (Pa. Cmwlth.2004).

6. The official comment of the Joint State Government Commission to section 201 of the Code at Subdivision 2 of the 1964 Report, relating to the definition of condemnees, states in part that: "It is intended by this definition [of condemnee] to include tenants, purchasers under agreements of sale and *holders of options* as condemnees." 26 P.S. § 1–201 (emphasis added).

7. MB points out that, although these Supreme Court decisions have not been rendered, MB was required to file its preliminary objections within thirty days of the condemnation or be barred from raising these preliminary objections in the future; thus, MB had no choice but to file preliminary objections as a "potential" condemnee to protect its potential rights and interests under the option agreement.

succeeds in its appeal to the Supreme Court and can compel the mayor to sign the option agreement, MB still would not gain an ownership interest in the Property. The option agreement called for MB to make the option payment of $2,500,000 by December 20, 2005, and no such payment was ever made. (Trial ct. op. at 7.) Thus, effective December 21, 2005, MB had no opportunity to become an optionee under the option agreement. *See Synes Appeal,* 401 Pa. 387, 164 A.2d 221 (1960) (holding that an optionee was entitled to damages for loss of his right to purchase property where, at the time of condemnation, *the optionee had secured the right to purchase by making a substantial down payment* ).

Because the record establishes that MB has no present ownership interest in the Property and has no possibility of acquiring such an interest, MB is not a condemnee for purposes of this eminent domain proceeding. Thus, the trial court properly dismissed MB's preliminary objections due to a lack of standing, and we affirm on that basis.[8]

PELLEGRINI, J., concurs in the result only.

### ORDER

AND NOW, this 9th day of January, 2007, the order of the Court of Common Pleas of Berks County, dated May 17, 2006, is hereby affirmed.

---

8. MB also argues that the trial court erred in concluding that the County was not prohibited from condemning public land for use as a recreational area where the land already is devoted to that particular use. Because we affirm the trial court based on MB's lack of standing, we need not address this alternate basis for the trial court's decision.