IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In Re: Condemnation of Land in Bristol Township, Bucks County Pennsylvania Located at 514 Magnolia Avenue | : <br> : <br> : <br> : <br> : |
| Tax Map Parcel No. 05-008-156 Owner: Scott Mark Milone and Barbara Jo Milone | : <br> : <br> : <br> : |
| Appeal of: The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for C.W. Abs, Inc. | :    No. 1325 C.D. 2019 <br> :    Argued: June 11, 2020 |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION
BY JUDGE FIZZANO CANNON         FILED: August 28, 2020

        The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for C.W. Abs, Inc. (Bank) appeals the August 19, 2019 order of the Court of Common Pleas of Bucks County (trial court) denying Bank's Petition for Appointment of Viewers. Upon review, we affirm.

        On November 24, 2006, Scott and Barbara Jo Milone (Condemnees) executed a mortgage with Bank on their real property located at 514 Magnolia

Avenue, Bristol Township, Pennsylvania (Property). *See* Mortgage dated November 24, 2006 (Mortgage), Reproduced Record (R.R.) at 021-038.[1] On August 11, 2016, the Redevelopment Authority of the County of Bucks (Condemnor) commenced this eminent domain action by filing a Declaration of Taking condemning the Property. *See* Declaration of Taking filed August 11, 2016 (Declaration of Taking), R.R. at 003-008. Condemnor served Condemnees and Bank with notice of the filing of the Declaration of Taking. *See* Notice to Mortgagee, R.R. at 001-002; Petition for Appointment of Viewers, R.R. at 012. Condemnees did not file preliminary objections to the Declaration of Taking and Bank did not seek to intervene in the action.

On October 21, 2016, Condemnor filed a Petition to Distribute Damages Pursuant to Section 521 of the Eminent Domain Code (Petition to Distribute). *See* Petition to Distribute at 3-4, 9-10. On November 28, 2016, the trial court entered and served on all parties a rule to show cause why just compensation for the condemnation of the Property should not be paid and distributed pursuant to Condemnor's Schedule of Proposed Distribution contained in the Petition to Distribute. *See* Rule, R.R. at 009. Condemnees did not respond to the Petition to Distribute or otherwise challenge the proposed distribution or amount of damages and did not request the appointment of a Board of Viewers.[2] Bank filed an Answer to Petition to Distribute Damages Pursuant to Section 521 of the Eminent Domain Code (Answer to Petition to Distribute) on December 27, 2016, disputing the

---

[1] We note that Bank neglected to paginate the reproduced record by adding a small "a" following each page number in accordance with Pennsylvania Rule of Appellate Procedure 2173.

[2] A board of viewers is a group of three independent individuals appointed by the court upon the filing of a petition for the appointment of viewers that views the premises, holds hearings, and files a report. *See* 26 Pa.C.S. § 504.

2

Petition to Distribute's proposed fair market value of the Property and requesting the appointment of a board of viewers, but not challenging the proposed distribution to Bank as mortgagee and to the other listed lienholders. *See* Answer to Petition to Distribute at 2.

On June 19, 2018, the trial court granted the Petition to Distribute. *See* Trial Court Order dated June 19, 2018 (Distribution Order), R.R. at 010. The Distribution Order provided for a total distribution of $45,000.00 to Property lienholders, with $39,784.28 going to Bank as mortgagee. *Id.* Condemnor distributed the just compensation amounts per the Distribution Order on July 25, 2018. *See* Condemnor's Answer to Petition for Appointment of Board of Viewers filed March 7, 2019 (Condemnor's Answer) at 2, R.R. at 043.

Six months later, on January 31, 2019, Bank filed its Petition for Appointment of Board of Viewers seeking, pursuant to the language contained in the recorded mortgage entered into by Bank and Condemnees, to act as assignees of the property owners, and, therefore, act as the condemnees to request a board of viewers regarding the condemnation of the Property. *See* Petition for Appointment of Board of Viewers at 1-4, R.R. at 011-014. Condemnor filed its Answer on March 7, 2019. *See* Condemnor's Answer, R.R. at 042-047. After briefing by both parties, the trial court denied the Petition for Appointment of Board of Viewers on August 19, 2019. *See* Trial Court Order dated August 19, 2019, R.R. at 091. On August 30, 2019, Bank filed a Motion for Reconsideration that the trial court denied by order dated September 6, 2019. *See* Motion for Reconsideration, R.R. at 092-101; Trial Court Order dated September 6, 2019, R.R. at 102. Bank timely appealed to this Court. *See* Notice of Appeal filed September 18, 2019, R.R. at 103-113.

3

On review,[3] Bank contends the trial court erred by failing to find that Bank, as an assignee of rights under the terms of a mortgage between Bank and Condemnees, has standing to petition for the appointment of a Board of Viewers. *See* Bank's Brief at 4, 9-15. Bank also claims the trial court erred by failing to distinguish between the role of Bank as mortgagor and the role of Bank as assignee, and further erred in concluding that, because Condemnees did not file a petition for appointment of a board of viewers, Bank could not intervene as a mortgagor. *Id.* at 4-5, 15-17.

The Eminent Domain Code[4] (Code) "provides a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages." Section 102 of the Code, 26 Pa.C.S. § 102. The Code provides that "[a] condemnor, condemnee or displaced person may file a petition requesting the appointment of viewers." Section 502(a) of the Code, 26 Pa.C.S. § 502(a). The Code defines "condemnee" as "[t]he owner of a property interest taken, injured or destroyed[,]" but expressly explains that "[t]he term does not include a mortgagee, judgment creditor or other lienholder." Section 103 of the Code, 26 Pa.C.S. § 103.

Based on these definitions, the trial court determined that:

there is no way to interpret this statute that would give the Bank the remedy it seeks. Only three classes of people are eligible to request the appointment of a Board of View under the statute: Condemnors, condemnees, and

---

[3] "In eminent domain cases, this Court reviews whether the trial court committed an abuse of discretion or an error of law. When an appeal presents a question of law, such as statutory interpretation, our scope of review is plenary." *Fuller v. Lehigh-Northampton Airport Auth.*, 172 A.3d 1166, 1169 n.1 (Pa. Cmwlth. 2017).

[4] 26 Pa.C.S. §§ 101-1106.

displaced person(s). It is clear from the wording of the statute that mortgagees do not fall into the category of condemnee.

Trial Court Opinion dated October 22, 2019 (Trial Court Opinion) at 4.

We agree with the trial court that the language of the Code excludes mortgagees from the definition of "condemnee"[5] and therefore from the class of persons eligible to request the appointment of a board of viewers under the statute. However, if Bank had figuratively stepped into Condemnees' shoes via an assignment of Condemnees' rights, then the Bank could have requested a board of viewers as a "condemnee" under the Code. Section 502(a) of the Code, 26 Pa.C.S. § 502(a).

Bank argues that the plain language of the Mortgage with Condemnees did assign Condemnees' rights to Bank in a condemnation action concerning the Property, and that Bank was therefore entitled to request the appointment of a board of viewers to review the Property valuation. *See* Bank's Brief at 9-15. As such, Bank argues, in an action where the Condemnees did not on their own request the appointment of a board of viewers, Bank can step into the Condemnees' shoes as an assignee under the terms of the Mortgage and make the request. *Id.* at 15-17. Here, however, we cannot agree that the language of the Mortgage sufficiently assigned Condemnees' rights in a condemnation action to Bank.

An assignment is a transfer of property or a right from one person to another; unless qualified, it extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee. *Crawford Cent. Sch. Dist. v. Com.*, 888 A.2d 616, 619 (Pa. 2005); *Wilcox v. Regester*, 207 A.2d 817, 820 (Pa. 1965)

_____

[5] We note that Bank does not fit the definition of either a "condemnor" or a "displaced person." *See* Section 103 of the Code, 26 Pa.C.S. § 103.

5

("[A]n effective assignment is one by which the assignor's right to performance by the obligor is extinguished and the assignee acquires a similar right to such performance."). Language that does not divest the assignor of a right, but instead merely gives written permission to do something, does not create either a legal or equitable assignment. *Melnick v. Pa. Co. for Banking & Trs*, 119 A.2d 825, 827 (Pa. Super. 1956).[6] "Under the law of assignment, the assignee succeeds to no greater rights than those possessed by the assignor." *Crawford*, 888 A.2d at 619-20 (quoting *Emp'rs Ins. of Wausau v. Dep't of Transp.,* 865 A.2d 825, 830-31 (Pa. 2005)). "An assignee's rights, however, are not inferior to those of the assignor." *Crawford*, 888 A.2d at 630. "Ultimately, an assignee stands in the shoes of the assignor." *Id.*

The language that Bank contends creates an assignment allowing it to request a board of viewers in this matter appears in Section 9 of the Mortgage and states as follows:

> **9. Protection of Lender's Interest in the Property and Rights Under the Security Agreement.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, the Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums

---

[6] Although not binding, Superior Court decisions are persuasive authority in this Court. *Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

6

secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Mortgage at 9, R.R. at 030.

By its language, Section 9 provides Bank with the option to "do and pay for whatever is reasonable or appropriate to protect [its] interest in the Property and rights under this Security Instrument[.]" Mortgage at 9, R.R. at 30. While Section 9 continues to describe what Bank *may do* to protect its interest, including appearing in court, taking steps to assure its secured position in bankruptcy proceedings, and entering and altering the Property, it does not assign Condemnees'

7

rights in legal proceedings, like a condemnation proceeding, to Bank. Simply stated, the language of Section 9 does not comprehensively extinguish Condemnees' rights in favor of Bank's right to proceed in their place in a condemnation proceeding.

To the extent Section 11 of the Mortgage assigns rights to Bank, it too is insufficient to allow Bank to request a board of viewers. Section 11 provides, in pertinent part:

> **11. Assignment of Miscellaneous Proceeds[7]: Forfeiture.** All Miscellaneous Proceeds assigned to and shall be paid to the Lender.
>
> . . . .
>
> In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.
>
> . . . .
>
> Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. . . . The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender. . . .

Mortgage Contract at 10-11, R.R. at 031-032.

---

[7] The Mortgage defines "Miscellaneous Proceeds" as "any compensation, settlement, award of damages, or proceeds paid by any third party . . . for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property." Mortgage at 3, R.R. at 023.

Section 11 of the Mortgage is simply an assignment of various proceeds derived from the loss of all or part of the value of the Property, which can include monies received as a result of a taking or condemnation of the property. Section 11 states that the Borrower, Condemnees, will be considered in default of the Mortgage if a proceeding that could result in forfeiture of the Property is commenced, and creates a priority of payment for any proceeds from such an action (first, to satisfy the Mortgage, with the remaining proceeds, if any, then going to Borrower). Section 11 merely establishes a priority of distribution of proceeds received from a taking or condemnation. There is no language contained in Section 11 of the Mortgage assigning the legal rights of the property owners in a condemnation proceeding to Bank so that Bank would be able to request a board of viewers by acting as condemnee.

Bank argues that it had no recourse as mortgagee because Condemnees did not request the appointment of a board of viewers, *see* Bank's Brief at 15-17. Unfortunately, in this matter, Bank may be correct. Bank was responsible for contractually protecting its interest in the Property in the Mortgage contract. It could have accomplished this protection of its interest with a proper assignment of Condemnees' rights within the Mortgage but failed to do so.[8] Alternatively, Section 9 of Mortgage provides that Bank "may do and pay for whatever is reasonable or appropriate to protect [its] interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property." Mortgage at 9, R.R. at 30. Bank could have

_____

[8] While we appreciate the position of the Concurring Opinion that the Code definition of "condemnee" expressly disallows a mortgagor from requesting a board of viewers on its own behalf, *see* 26 Pa.C.S. §§ 103 & 502(a), the Code does not contain language that would prevent or prohibit a mortgagor from using the properly assigned rights of a condemnee to request a board of viewers as a condemnee.

exercised its rights under the Mortgage contract and sought to compel Condemnees to uphold their covenants to protect its interest by requesting a board of viewers. The Code provides:

> The court may permit a mortgagee, judgment creditor or other lienholder to intervene in the proceedings where the person's interest is not adequately protected, but a person shall not be a party to the proceedings unless the person has intervened.

26 Pa.C.S. § 506(c). The comment to Section 506 provides that this section:

> authorizes the court to permit a mortgagee to intervene, but only if his interest is not adequately protected. The mortgagee should not be permitted to intervene if the owner is proceeding with due diligence and the value of the property appears adequate to secure the mortgage debt. Judgment creditors and other lienholders have not been included since they had an immediate right to execution whereas the mortgagee's rights are strictly contractual. In addition, the proceedings would be cluttered if lienholders, in general, were permitted to intervene.

26 Pa.C.S. § 506, *cmt*. Condemnor provided Bank with notice of the filing of a Declaration of Taking with respect to the Property in the trial court. While Bank could not have separately filed a Petition for Appointment of a Board of Viewers at that time because such filings were limited to condemnors, condemnees, and displaced persons under Section 502(a) of the Code, it could have sought to intervene in the matter to protect its interest in the Property, but did not. This failure, coupled with the fact that the Mortgage did not include a proper assignment of Condemnees' rights, may have indeed left Bank without recourse in this matter. However, it is not for this Court to provide an avenue of protection or relief where the legislature has

10

not, and where Bank did not take appropriate steps to adequately protect its own interest should the Property be taken by condemnation.

For these reasons, we affirm the trial court's August 19, 2019 order.[9]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[9] We acknowledge that our basis for affirming the trial court differs somewhat from the trial court's reasoning, but note that this Court may affirm a trial court's order based on a different rationale if the basis for our decision is clear on the record. *Com. v. Ortho-McNeil-Janssen Pharm., Inc.*, 52 A.3d 498, 512 n.10 (Pa. Cmwlth. 2012).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation of Land in    :
Bristol Township, Bucks County    :
Pennsylvania Located at    :
514 Magnolia Avenue    :
    :
Tax Map Parcel No. 05-008-156    :
Owner: Scott Mark Milone and    :
Barbara Jo Milone    :
    :
Appeal of: The Bank of New York    :
Mellon f/k/a The Bank of New York,    :   No. 1325 C.D. 2019
as Trustee for C.W. Abs, Inc.    :

# O R D E R

AND NOW, this 28th day of August, 2020, the August 19, 2019 order of the Court of Common Pleas of Bucks County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation of Land in Bristol   :
Township, Bucks County   :
Pennsylvania   :
Located at 514 Magnolia Avenue   :
   :
Tax Map Parcel No. 05-008-156   :  No.  1325 C.D. 2019
Owner: Scott Mark Milone and   :
Barbara Jo Milone   :  Argued:  June 11, 2020
   :
Appeal of: The Bank of New York   :
Mellon f/k/a The Bank of New York,   :
as Trustee for C.W. Abs, Inc.   :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge


CONCURRING OPINION
BY JUDGE McCULLOUGH                FILED:  August 28, 2020


         I agree with the Majority's ultimate conclusion to affirm the Court of Common Pleas of Bucks County's denial of The Bank of New York Mellon's ("Bank") petition for the appointment of a board of viewers.  However, I would not approach the issue as the Majority does by interpreting the *Mortgage* and whether it effectively "assigns" the mortgagees' "right" to request a board of viewers to the

Bank. Instead, I submit that our focus must be on what the **Eminent Domain Code**[1] permits.

First and foremost, private contracts cannot change existing statutory laws. *See Generette v. Donegal Mutual Insurance Company*, 957 A.2d 1180, 1191 (Pa. 2008); *Prudential Property & Casualty Insurance Co. v. Colbert*, 813 A.2d 747, 750 (Pa. 2002).

Language which purports to assign a mortgagor's right to petition for the appointment of a board of viewers would be directly at odds with the statutory language of the Code, which authorizes only a ***condemnor, condemnee, or displaced person*** to file a petition requesting the appointment of a board of viewers.

Section 502(a) of the Code, which is jurisdictional, provides that "a ***condemnor, condemnee, or displaced person*** may file a petition requesting the appointment of viewers." 26 Pa.C.S. §502(a) (emphasis added). The Code, in no uncertain terms, excludes "mortgagees and lienholders" from the definition of a "condemnee." 26 Pa.C.S. §103. "Condemnee" is defined as "[t]he owner of a property interest taken, injured or destroyed. ***The term does not include a mortgagee, judgment creditor or other lienholder***." 26 Pa.C.S. §103 (emphasis added). In commenting upon this definition, the Joint State Government Commission noted:

> Mortgagees, judgment creditors and lienholders have been excluded from the definition since, under this act, ***they do not have such an interest in the property as to be considered condemnees***. This is in accord with existing law. It is intended by this definition to include tenants, purchasers under agreements of sale and holders of options as condemnees.

---

[1] 26 Pa.C.S. §§101-1106 ("Code").

26 Pa.C.S. §103, Jt. State Gov't. Comm'n., Cmt. (1964) (emphasis added).

Moreover, a mortgagee cannot ***achieve condemnee status*** by simple assignment. As sections 502(a) and 103 of the Code reinforce, the status of a "condemnee" derives from the concept of property ownership or occupancy. *In re Condemnation by County of Berks*, 914 A.2d 962, 965 (Pa. Cmwlth. 2007) ("[I]t is axiomatic that to assert the rights of a condemnee, the party must be an owner of a property interest taken.").

Under Pennsylvania law, a mortgagee is not an "owner" of the property that secures his debt. Mortgages are merely ***security interests*** for the payment of money, performance, or other collateral. *Pines v. Farrell*, 848 A.2d 94, 100 (Pa. 2004); *Winthrop v. Arthur W. Binns, Inc.*, 50 A.2d 718, 719 (Pa. Super. 1947); *see In re City of Philadelphia, Fortieth Ward*, 63 A.2d 42, 43 (Pa. 1949) ("[A] mortgage is both in law and in equity only a security for the payment of money and passes no title to the land. The mortgagor is the owner of the land.").

Thus, even if the Mortgage includes language assigning to the mortgagee a mortgagor's right to request the appointment of a board of viewers in an eminent domain proceeding, the Bank will still not gain the requisite proprietary ***ownership interest*** in the property to be considered a condemnee for purposes of this eminent domain proceeding. Unless and until the Bank forecloses on the property and purchases the property at a foreclosure sale, it does not have the requisite ownership interest in the land condemned to give it standing to request the appointment of a board of viewers under the Code, or demand a trial on the issue of just compensation.

By concluding that the Bank failed to "contractually protect its interest in the property in the mortgage contract" and that the Bank "could have accomplished this protection of its interest with a proper ***assignment of***

*Condemnee's rights within the Mortgage*"—I believe the Majority is indirectly and inaccurately counseling banks and mortgagees how to sidestep the Code's statutory restrictions by revising the standard language of their mortgages. Because the Majority's opinion has the potential to open the flood gates to mortgagees and lienholders to intercede in condemnation proceedings in ways that have never before been contemplated under the Code, I would refrain offering such guidance without a deeper legal analysis of whether a condemnee's statutory standing to request the appointment of a board of viewers under the Code is even "assignable."[2]

For these reasons, I concur in the result only.

_____
PATRICIA A. McCULLOUGH, Judge

---

[2] This writer's examination of the law of Pennsylvania, however, has not revealed any precedent squarely deciding the issue.